**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**
**BENTON DIVISION**

| | | |
|---|---|---|
| SABRINA WILSON | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Case No. 3:22-cv-1651 |
| | ) | |
| COOPERSURGICAL, INC., | ) | |
| FEMCARE, LTD. – UK SUBSIDIARY OF | ) | |
| UTAH MEDICAL PRODUCTS, INC., and | ) | |
| UTAH MEDICAL PRODUCTS, INC. | ) | |
| | ) | |
| *Defendants* | ) | |

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, Sabrina Wilson (hereinafter "Plaintiff" and/or "Ms. Wilson") by and through her counsel, Griffin Purnell LLC, and for her cause of action against Defendants CooperSurgical, Inc., Femcare, Ltd. – UK subsidiary of Utah Medical Products, Inc., and Utah Medical Products, Inc. (collectively hereinafter "Defendants"), all jointly and severally, as the companies and/or successors in interest to the companies that designed, developed, manufactured, tested, labeled, packaged, imported, distributed, marketed and/or sold the Filshie Clip medical device that was surgically used in Plaintiff and others throughout the United States and the world. Accordingly, Plaintiff alleges and states to the Court as follows:

### I.  INTRODUCTION

1.  Plaintiff brings this civil action to recover damages within the jurisdictional limits of this Court including all (1) General Damages; (2) Special Damages; and (3) Punitive Damages as well as all other damages allowable under Illinois law as a result of the use, design, manufacture, surveillance, import, sale, marketing, advertising, promotion, labeling, packaging, and distribution of Filshie Clips.

2.      Plaintiff brings claims fully set forth below asserting: (1) strict products liability; (2) strict products liability – failure to warn; (3) negligence; (4) gross negligence; and (5) punitive damages; against each Defendant.

3.      This claim arises from Plaintiff's Filshie Clip tubal ligation procedure which, because of Defendants' actions and omissions, resulted in a series of damages.

## II.      PARTIES

4.      Plaintiff, Sabrina Wilson, lives in Flat Rock, Illinois, and is subject to the jurisdiction of this Court, and is deemed to be a resident of the State of Illinois for purposes of venue and jurisdiction.

5.      Defendant CooperSurgical, Inc. ("CooperSurgical") is a Delaware corporation with its principal place of business located at 95 Corporate Drive in Trumbull, Connecticut. CooperSurgical may be served with process by serving its registered agent at CooperSurgical, Inc., 95 Corporate Drive, Trumbull, CT 06611. CooperSurgical is a citizen of both Delaware and Connecticut for diversity of citizenship purposes.

6.      Defendant Femcare, Ltd. ("Femcare") is a UK subsidiary of Utah Medical Products, Inc. with its principal place of business located at 32 Premier Way, Romsey, Hampshire SO51 9DQ, United Kingdom. Femcare may be served with process by serving its registered agent Karen Elizabeth Glasbey, Femcare UK, 32 Premier Way, Romsey, Hampshire, United Kingdom SO519DQ. Femcare is a UK subsidiary of Utah Medical Products, Inc., and a citizen of England for diversity of citizenship purposes.

7.      Defendant Utah Medical Products, Inc. ("Utah Medical") is the parent company of Femcare, Ltd. with its principal place of business located at 7043 South 300 West, Midvale, Utah 84047-1048 and may be served with process by serving its registered agent Ben Shirley at 7043

South 300 West, Midvale, UT 84047. Utah Medical is a citizen of Utah for diversity of citizenship purposes.

8.     All acts and omissions of the Defendants as described herein were done by its agents, servants, employees and/or owners, acting in the course and scope of its respective agencies, services, employments and/or ownership. Plaintiff incorporates and asserts the Parties information in the subsequent paragraphs.

### III.     JURISDICTION & VENUE

9.     This Court has subject matter original jurisdiction through diversity of citizenship pursuant to 28 U.S.C. §1332(a) because the Plaintiff is a citizen of Illinois, the named Defendants are citizens of different states and the amount in controversy exceeds the sum of value of $75,000.00, exclusive of interest and costs.

10.     This Court has specific jurisdiction over these Defendants because they purposefully availed themselves of the privilege of conducting business in the State of Illinois and established minimum contacts sufficient to confer jurisdiction over these Defendants, and the assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and is consistent with constitutional requirements of due process.

11.     CooperSurgical, Femcare, and Utah Medical manufacture, import, distribute and sell their products and intend that they be used by medical professionals treating patients in Illinois.

12.     At all times relevant hereto and alleged herein, the Defendants conducted and continue to regularly conduct substantial business within the State of Illinois which included and continues to include, the research, safety surveillance, manufacture, import, sale, distribution and/or marketing of Filshie Clips which are distributed through the stream of interstate and intrastate commerce in the State of Illinois, and within the jurisdiction of the United States District

Court for the Southern District of Illinois.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. §1965 (a) because a substantial part of the events or omissions giving rise to the claim occurred in this District and each Defendant transacts business affairs and conducts activity that gave rise to the claim of relief in this District. Plaintiff incorporates and assert the Jurisdiction and Venue information in the subsequent paragraphs.

## IV.     FACTUAL BACKGROUND

### a.     *Plaintiff Brings this Action Because Filshie Clips Injured them after Migration.*

14.     Plaintiff in this action seek compensation for injuries she sustained in connection with the use of Filshie Clips, a medical device used in tubal ligations.

15.     This action is brought by Plaintiff. Ms. Wilson was implanted with a female birth control device known as a Filshie Clip. In short, this device is intended to cause bilateral occlusion (blockage) of the fallopian tubes by applying a clip onto the fallopian tubes which then anchors and elicits tissue growth, theoretically causing a closure of the tubes. However, in reality, the clips migrate from the tubes wreaking havoc on the female body.

### b.     *What is a Filshie Clip and How is it Supposed to Work?*

16.     Filshie Clips are part of the "Filshie Clip system" for laparoscopic tubal ligation which involves applying a titanium clip with silicone rubber lining around each of the fallopian tubes.

17.     The Filshie Clip works by exerting continued pressure on the fallopian tube, causing avascularization for the 3 to 5 mm area it encompasses. The silicone continues this pressure even after necrosis starts and the fallopian tube decreases in size. Fibrosis then occurs, and the clip is peritonealized if all goes as planned.

18.     Defendants' disposable delivery system consists of an applicator which allows insertion into the women's body to allow the clip to be snapped onto the fallopian tube.

19.     A women's choice of birth control is a deeply personal decision, particularly when choosing a long-acting form of birth control like a tubal ligation which should permanently alter a women's body.

     *c.*     ***Background on Filshie Clips and the FDA Process.***

20.     On September 5, 1996, Femcare, the manufacturer of the Filshie Clip, obtained Conditional Premarket Approval ("PMA") by the Food and Drug Administration ("FDA") (PMA number P920046). The Defendants' failure to conform with the FDA requirements prescribed in the PMA and violations of relevant state and federal law form the basis of this lawsuit.

21.     Class III medical devices are those that either "present a potential  unreasonable risk of illness or injury or are for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health." 21 U.S.C. § 360(c)(1)(c).

22.     Because Filshie Clips are classified as a Class III medical device the FDA evaluated Filshie Clips' safety and effectiveness prior to granting the product conditional approval.

23.     At that time, the FDA authorized its commercial distribution. Such approval was contingent upon the FDA's finding that there was "a reasonable assurance" of the device's safety and effectiveness. *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008).

24.     However, the PMA imposed certain conditions on Femcare's sale of the product, including certain labeling requirements and restrictions on false or misleading advertising.

25.     The Medical Device Amendments of 1976, 21 U.S.C. § 360(c) *et seq*. (the "MDA"), expressly preempt certain state law requirements, stating that:

> Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement –
>
> (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
>
> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a).

26.     In *Riegel v. Medtronic, Inc.*, the United States Supreme Court set forth a two-step analysis for determining whether a claim is expressly preempted pursuant to the statute. 552 U.S. 312, 321-22 (2008).

27.     First, the court must ascertain whether the federal government has established requirements applicable to the medical device at issue. *Id*. at 321. The Supreme Court concluded that any Class III device that receives premarket approval, which is specific to individual devices, satisfies this first prong of the § 360k(a) test.

28.     Second, the court must determine whether the state common law claims relate to safety and effectiveness and impose requirements that are "different from, or in addition to" those imposed by federal law. *Id.* at 321-22 (quoting 21 U.S.C. § 360k(a)(1)).

29.     Here, the express preemption provision "does not [, however,] prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements." *Id.* at 330.

### d.     *Plaintiff's Claims are Not Expressly Preempted by Federal Law Because They Do Not Impose Additional Requirements on the Defendants.*

30.     Personal injury claims caused by a medical device were not swept away on the day the MDA was enacted in 1976.

31.     The PMA process does not establish that a medical device manufacturer and/or distributor are entirely immune from liability.

32.     § 360k(a) does not preempt state-law claims against a medical device manufacturer based on duties that parallel federal requirements because such claims do not impose requirements that are "different from, or in addition to" those imposed by federal law.

33.     State tort law provides a right of action to a person who is injured when a device manufacturer's noncompliance with federal reporting standards results in a failure to warn of the risks of using a device and causes injury to a patient.

34.     Plaintiff's claims are based solely on Defendants' failure to comply with the conditions set forth in the PMA approval order and the requirements set by federal regulatory and statutory law and does not impose any requirements that are different from, or in additional to, the Defendants' duties as a manufacturer of a Class III medical device approved by the FDA. The violation of these federal and regulatory requirements alone establishes liability and Plaintiff is seeking a damages remedy for the violations to the extent, and only to the extent, that they run parallel to the federal conditions and requirements and are not different from or in addition to the requirements of federal law.

####     e.     *Plaintiff's Claims are Not Impliedly Preempted by Federal Law Because it does not rest entirely on Defendants' FDA Violations*

35.     Section 337 of the MDA requires that "all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States." 21 U.S.C. § 337a. The Supreme Court interpreted this to mean that state law claims were impliedly preempted if those claims seek to privately enforce a duty owed to the FDA. *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 353 (2001).

36.     However, state law claims are permitted if they use a violation of federal regulations as a measure of standard of care, and as evidence of wrongdoing, to support their state law claims.

37.     Here, Plaintiff's claims are plead to seek to prove Defendants' breach of a state duty by showing Defendants violated the FDA's regulations. Therefore, Plaintiff's claims are not impliedly preempted by federal law.

>    **f.     *CooperSurgical, Femcare, and Utah Medical Design, Promote, Import, and Distribute Defective Filshie Clips***

38.     Defendants, CooperSurgical, Femcare, and Utah Medical, singularly and in combination, designed, manufactured, imported, sold, and distributed Filshie Clips and related equipment utilized in Plaintiff's tubal ligation.

39.     For years, Defendants intentionally manufactured, imported, sold, and distributed Filshie Clips to the public as a quick, easy, and simple form of sterilization. Defendants told women they could use Filshie Clips to effectively prevent pregnancy while the product was in place and that the product was safe. Defendants' representations were false.

40.     Created by Marcus Filshie in the late 1970s, more than 12 million women worldwide have undergone tubal ligation with the Filshie Clip method.

41.     As stated above, the Filshie Clip works by exerting continued pressure on the fallopian tube, causing avascularization for the 3 to 5 mm area it encompasses. The silicone continues this pressure even after necrosis starts and the fallopian tube decreases in size. Fibrosis then occurs, and the clip is peritonealized. The clips are placed perpendicular to the isthmic portion of the tube, so that it completely encompasses the tube, and the lower edge of the jaw can be seen in the mesosalpinx.



1

42.     The Filshie Clip System was manufactured and promoted prior to 1996 in Europe and elsewhere. In 1996, Femcare, the manufacturer of the Filshie Clips, received premarket approval from the FDA, after information was submitted regarding, among other things, the safety and efficacy of the system.

43.     Subsequently, the Filshie Clip System was marketed and sold throughout the United States, including the State of Illinois.

44.     Femcare is the manufacturer of the Filshie Clip system.

45.     During the times relevant to this litigation and until 2019, CooperSurgical imported, distributed, marketed, and sold the Filshie Clip system in the United States.

46.     From 2019 to the present day, Femcare's parent company, Utah Medical Products, Inc., exclusively imports, sells, distributes, and markets the Filshie Clips in the United States.

---

[1] Medical drawing of Filshie Clips being applied in a laparoscopic and c-section procedure provided by CooperSurgical in their surgical products catalog.

> g. *CooperSurgical, Femcare, and Utah Medical Failed to Report the Risks Associated with Filshie Clips.*

47.     It should go without saying that it is of the utmost importance that women know all risks associated with a particular type of birth control given that a woman's choice of birth control can have long-term consequences on her health.

48.     Filshie Clips pose significant health risk, and the product has subjected untold thousands of women to significant injuries. These injuries stem from the simple fact that Filshie Clips have a propensity to migrate after being placed on the fallopian tubes. Migration of the clips following a normal application is estimated to occur over 25% of the time. The pathophysiology is related to the speed at which peritoneal-like tissue forms over the clip anchoring it to the fallopian tube.[2]

49.     The migration of the clip often requires surgical intervention to remove the Filshie Clips from the woman's body. Defendants neither warned nor adequately informed Plaintiff nor their healthcare providers how frequently these migrations occur or the severity and permanency of the potential injuries even though Defendants had received adverse reports and knew or should have known Filshie Clips had a significant propensity to migrate.

50.     Women and their doctors depend on Defendants, the manufacturers and distributors of products like Filshie Clips, to be forthcoming about the safety and risks of Filshie Clips. This reliance on Defendants was warranted. The regulatory scheme that governs Filshie Clips is premised on a system whereby the manufacturer is responsible for reporting relevant safety information.

---

[2] G. Marcus Filshie, *Female sterilization: medico legal aspects,* Reviews in Gynecological Practice; Vol.1 Summer 2001.

51.     The onus is on the manufacturer, importer, seller, and distributor to come forward with any safety risks because the public and FDA would otherwise have no insight of adverse events.

52.     The Plaintiff has suffered as a result of Defendants' failure to comply with the regulations and conditions imposed by FDA.

53.     As shown below in the excerpt from the Defendants' PMA application, during the premarket approval process, it was reported to the FDA that the Filshie Clip System had a migration incidence of .13%.

**ADVERSE EFFECTS**

The following adverse effects have been reported with the use of the Filshie Clip (see Table 1).

pregnancy (0.46%); ectopic pregnancy (0.016%); clip migration or expulsion (0.13%); misapplication to ovarian ligament, broad ligament, omentum, bowel, tubal serosa, cornual or broad ligament (0.05%); pain and cramping (35.7%);

54.     However, the risk of clip migration was significantly higher and continued to increase from year to year since the initial PMA. Despite these increases, Defendants failed to address the Filshie Clips safety issues, even though adverse event reports did or should have alerted them to a product defect causing the device to cause injuries.

55.     Instead, CooperSurgical, Femcare, and Utah Medical tout the benefits of the Filshie Clip version of the bilateral tubal ligation procedure over other available procedures. As noted in the press release regarding the Femcare purchase, the Filshie Clip System was claimed to be "safer than electrocautery and the newer hysteroscopic devices" without mention of the risk of migration associated with the clips.

In summary, the Filshie Clip is as effective as the newest occlusive devices and much more effective than the more traditional sterilization approaches, is as easy or easier to place as any of the traditional techniques and easier than the newer hysteroscopic devices, is safer than electrocautery and the newer hysteroscopic devices when placed by less than well-trained and skilled clinicians, and has a substantially higher probability of reversibility when compared to all of the other approaches for women who later decide they may like to get pregnant.



(Clips shown actual size)

## The Filshie Tubal Ligation System Offers Physicians and Patients the Greatest Versatility in Female Sterilization

This minimally invasive procedure can be effectively utilized in an interval laparoscopic approach, at the time of cesarean delivery, or after vaginal birth via minilaparotomy. The Filshie Tubal Ligation System requires minimal procedure time because there is no tying, transection or cauterization of the fallopian tubes – reducing the risk of damage to adjacent organs caused by electrocautery, and significantly lowering the risk of bleeding associated with other ligation methods that require tube transection.

## Safe and Successful Sterilization – For Use in Laparoscopic and C-Section Procedures

Specific applicators have been designed for single- and dual-incision laparoscopy, or L & D procedures. A small titanium clip with soft Silastic® lining is positioned on the fallopian tube, encapsulating the entire circumference. Once applied, the silicone lining maintains pressure on the tube, resulting in complete tubal occlusion and eventual necrosis at the clip site. With a 99.7 percent efficacy rate, the Filshie Tubal Ligation System is one of the most effective sterilization procedures available today – even for thicker or edematous tubes. It is easy to learn and to use, and can be performed very quickly in either an inpatient or outpatient setting.

### Proven Benefits

- No transection of tubes or surrounding tissue – may reduce the risk of bleeding
- Extremely high success rate of 99.7 percent[1]
- Lowest incidence of ectopic pregnancy[2,3]
- Minimal procedure time required – proven faster than the Pomeroy technique[4]
- Engineered to enclose thicker or edematous fallopian tubes
- MRI not contraindicated up to 3T
- Completely latex-free
- Only 4 mm of fallopian tube affected by clip

56.     Defendants had a duty to act as reasonable manufacturers, importers, distributors, and sellers of Class III medical devices. They had a duty to continually monitor their product, including, but not limited to, its design, manufacturing, performance, safety profile, and labeling. They had a duty to continually test their product and ensure it was safe and would perform as intended. Yet Defendants breached their duties and, as a result, Plaintiff was injured.

57.     The knowledge Defendants have regarding the migration issues involved with the Filshie Clip Systems not only triggers responsibility under Illinois law for product liability, they

also imposed parallel duties on the Defendants pursuant to the Food, Drug, and Cosmetic Act ("FDCA") to accurately report and update the FDA of the same. These duties, both under Illinois product liability law and the FDCA, are substantially similar. The Illinois product liability law does not impose a higher standard than the FDCA.

58.    If Defendants had timely disclosed the propensity and severity of risks associated with use of the Filshie Clips, Plaintiff's injuries could have been avoided. Instead, Defendants did nothing, and for that, Plaintiff here seeks redress both to compensate her for her losses and to strongly deter future, similar misconduct.

### h.    *Ms. Wilson is Implanted with Filshie Clips in her Tubal Ligation*

59.    In 2015, Ms. Wilson underwent a tubal ligation procedure.

60.    The tubal ligation procedure used Filshie Clips.

61.    Ms. Wilson was provided with a Disclosure and Consent for medical and surgical procedures which included generic risks and hazards associated with the procedure. No mention was made of the risk of migration and the appurtenant damages that could be caused by the Filshie Clips. The only risks mentioned were associated with the ligation procedure itself.

62.    At the time, and upon information and belief to date, the product information sheet supplied to her healthcare providers made no mention of the actual rate of migration known of the Filshie Clips.

63.    Shortly after tubal ligation surgery, Ms. Wilson began experiencing severe pain and discomfort in her lower abdominal region.

64.    As time went on Ms. Wilson's pain became more severe. She experienced substantial pain from the clip migrating through her body, complications and pain with sexual function, and discomfort and pain from the clip pressing through her vaginal wall.

*i.*     ***Ms. Wilson Discovers The Cause of Her Suffering.***

65.     In August of 2020, Ms. Wilson's doctor confirmed a clip was missing following radiological imaging. Plaintiff was informed the Filshie Clips remained in her body and were displaced.

66.     Ms. Wilson continues to live under the specter of having the foreign bodies migrating through her pelvic area and the fear of having to undergo surgery as a result of these products.

67.     The design, manufacture, and warnings of the CooperSurgical and Femcare devices at issue in this case exhibited several defects that violated common-sense consumer expectations, as well as the expectations of the medical professionals involved in gynecological care.

68.     The Filshie Clips, which were warranted, marketed, and purported to be permanently in place on the fallopian tubes, were defective.

69.     Evidence of the Filshie Clips propensity to migrate was available to Defendants and should have been relayed to the physicians and/or Plaintiff by way of warning on the product packaging or other dissemination of the information.

70.     To date, Defendants have failed to adequately warn of these dangers, and certainly had not done so at the time Plaintiff consented to the Filshie Clip method of sterilization.

71.     As a result of the design, manufacture, marketing, import, distribution and sale of the defective Filshie Clips, Plaintiff (and a large number of the women in the world who had submitted to their use) has and will continue to experience significant pain, suffering, and surgeries she otherwise would not have had she chosen one of the other methods of sterilization available to women.

## V. THE DISCOVERY RULE APPLIES TO THIS MATTER

72.     The discovery rule should be applied to toll the running of the statute of limitations until Plaintiff knew, or through the exercise of reasonable care and diligence should have known, of facts indicating that the Plaintiff had been injured, the cause of the injury and the tortious nature of the wrongdoing that caused the injury.

73.     Despite diligent investigation by Plaintiff of the cause of their injuries, the nature of Plaintiff's injuries and damages and their relation to Filshie Clips and Defendants' wrongful conduct was not discovered and could not have been discovered, until a date within the applicable statute of limitations.

74.     Therefore, under appropriate application of the discovery rule, Plaintiff's suit was filed within the applicable statutory limitations period.

75.     Any applicable statutes of limitations have been tolled by the knowing and active concealment and denial of material facts known by the Defendants when they had a duty to disclose those facts.

76.     The Defendants' purposeful and fraudulent acts of concealment have kept Plaintiff ignorant of vital information essential to the pursuit of Plaintiff's claims, without any fault or lack of diligence on Plaintiff's part.

77.     Defendants are estopped from relying on the statute of limitations defense because Defendants failed to timely disclose, among other things, facts evidencing the defective and unreasonably dangerous nature of their Filshie Clips.

78.     Plaintiff incorporates and asserts the factual background and discovery rule information in the subsequent paragraphs.

## VI.    CAUSES OF ACTION

**COUNT 1: FEMCARE – STRICT PRODUCTS LIABILITY – DESIGN DEFECT BASED EXCLUSIVELY ON VIOLATIONS OF 21 C.F.R. §§ PARTS 803, 814 AND 820 *et seq.***

79.     In Illinois law, a strict liability claim must show that (1) the product that caused harm was unreasonably unsafe or dangerous when it was designed, manufactured or distributed; (2) the manufacturer, sell, or distributor expected or intended for the products to reach the consumer without any changes by third parties; and (3) the defective product proximately caused injury. A design defect occurs when a product conforms to the intended design but the intended design itself renders the product unreasonably dangerous. A product is considered unreasonably unsafe or dangerous when (1) the product is unsafe when put to use in an intended or reasonably foreseeable manner; or (2) it is dangerous to an extent beyond that which would be contemplated by the ordinary consumer.

80.     Further, parallel with federal law, Illinois law treats violations of federal statutes and regulations as establishing a *prima facie* case and as evidence of a claim under the products liability claims. However, to be clear, under the same facts, Plaintiff would have been able to establish a recoverable claim under Illinois' parallel common law negligence, even in the absence of federal law.

81.     Femcare, as a manufacturer, seller, and distributor of products in Illinois, owed a common law duty to comply with all applicable federal laws and regulations.

82.     Femcare, as the manufacturer, seller, and distributor of a Class III medical device, has a duty and is required to comply with and not deviate from federal statutory and regulatory requirements that applied to the Filshie Clips. As a Class III medical device, Femcare was under a continuing duty to monitor its product after premarket approval and to discover and report to the FDA any complaints about the products performance and any adverse health consequences of

which it became aware and that are or may be attributable to the product. Femcare's duties under the FDA regulations and premarket approval conditions are listed and specified as follows:

(a) Pursuant to 21 C.F.R. § 814.80, Femcare, as a manufacturer, seller, and distributor of a Class III medical device, has a duty to manufacture, package, store, label, distribute and advertise the Filshie clip consistent with the conditions of approval specified by the PMA process.[3] Any deviation from the PMA approval order was a violation of federal law and also a violation of Illinois common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(b) Pursuant to 21 C.F.R. § 814.82, Femcare, as a manufacturer, seller, and distributor of a Class III medical device, also has a duty to adhere to any post approval requirements in the PMA approval order,[4] which "may include": (1) continuing evaluation and period reporting, (2) warnings, hazards, or precautions important to the device to be prominently displayed in the labeling of a device and in advertising, (3) maintenance of records to submit to the FDA to trace patients if such information is necessary to protect public health

---

[3] As of this filing, Plaintiff does not have access to the complete Filshie Clip PMA approval order, Femcare's PMA application, specific post approval requirements, or any supplementary orders, along with the specified requirements listed therein. While Plaintiff submitted requests for the PMA orders as it relates to the Filshie Clips under the Freedom of Information Act, Plaintiff has yet to receive this information from the FDA. Nor have the parties exchanged discovery materials in this matter.

Courts have acknowledged product-specific information and requirements may not be readily available to plaintiffs, and therefore, complaints may lack specific details on federal requirements and regulations. *Bausch v. Stryker Corp.*, 630 F.3d 546, 560 (7th Cir. 2010). Until formal discovery, a plaintiff is not expected to provide a detailed statement of the specific bases for her claim. *Id.* Here in the pleadings stage, so long as a plaintiff, satisfactorily limits claims to violations of federal regulations, allegations as set forth in the complaint are sufficient to state a claim that is plausible on its face and are not preempted under § 360k(a). *Godelia v. Doe 1*, 881 F.3d 1309, 1319 (11th Cir. 2018) (while plaintiff had a "difficult time proving that it was the violations of the MDA regulations that caused the defect," the allegations in the complaint were deemed "sufficient to state a claim").

Once Plaintiff obtains PMA approval order and related documents through discovery, Plaintiff will amend this Complaint based on the specific requirements set forth therein as necessary.

[4] *See* previous footnote.

or if the FDA needs to review the safety of the device; (4) and "such other requirements as FDA determines are necessary to provide reasonable assurance, or continued reasonable assurance, of the safety and effectiveness of the device." *Id.* at §§ 814.82(a)(2), (3), (5), (6), (9). Any deviation from the post approval requirements is a violation of federal law and also a violation of Illinois common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(c) Pursuant to 21 C.F.R. § 814.84, Femcare, as a manufacturer of a Class III medical device, also has a duty to provide the FDA with unpublished reports of data from any clinical investigations or nonclinical laboratory studies involving Filshie Clips and reports on scientific literature concerning the Filshie Clips known to or that reasonably should be known to it and were not previously submitted as a part of the PMA. Any deviation from the PMA approval order, or failure to provide such material to the FDA is a violation of federal law and also a violation of Illinois common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(d) Pursuant to 21 C.F.R. § 820.100, Femcare, as the manufacturer, seller, and distributor of a Class III medical device, also has a duty to establish and maintain procedures for implementing a corrective and preventative action plan. Femcare is required to be pro-active and investigate the cause of nonconformities and implement effective corrective action to address complaints about the device, which includes but is not limited to investigating nonconformities, identifying actions to correct problems, verifying the corrective or preventative action, implementing change, ensuring information about the

problem is disseminated to those directly responsible for the quality of the product, submitting relevant information to management, and documenting all such activities. Failure to do so is a violation of federal law and also in violation of Illinois's common law duties as a manufacturer and seller but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(e)  Pursuant to 21 C.F.R. § 820.198, Femcare, as the manufacturer, seller, and distributor of a Class III medical device, has a duty to maintain complaint files and ensure that all complaints are properly processed, evaluated, documented, and determined whether the complaint would need to be reported to the FDA (*see* 21 C.F.R. § 803 *et. seq.*) Failure to do so is a violation of federal law and also in violation of Illinois's common law duties as a manufacturer and seller but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(f)  Pursuant to 21 C.F.R. §§ 803.1, 803.10, 803.40, 803.50, and 803.58, Femcare, as the manufacturer, importer, distributor and seller of a Class III medical device, has a duty to properly report serious injuries to the FDA. Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as a manufacturer and seller to the Plaintiff but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

83.     Despite its duties, Femcare manufactured, designed, and/or sold an unreasonably dangerous product that did not fit for its intended purpose and did not meet the reasonable expectations of its consumers, but only to the extent that such Femcare's actions are parallel to and not different from or in addition to the requirement of the federal law in the following ways:

(a) Femcare failed to comply with 21 C.F.R. §§ 814.80 and 814.82 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare did not adequately adhere to the conditions of approval and post approval requirements that are expected to be in the PMA approval order. Femcare did not properly evaluate, address, or report injury caused by the Filshie Clips. Femcare did not timely or accurately report the higher migration rates to the FDA. Femcare did not provide reasonable assurance, or continued reasonable assurance, of the safety and effectiveness of the device.

(b) Femcare failed to comply with 21 C.F.R. § 814.84 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare failed to properly report any unpublished reports of dates from any clinical or nonclinical studies involving Filshie Clips. Femcare also failed to report scientific literature concerning Filshie Clips.

(c) Femcare failed to comply with 21 C.F.R. § 820.100 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare failed to establish and maintain procedures for implementing a corrective and preventative action plan. Femcare did not proactively and adequately investigate complaints it received about the Filshie Clips, did not identify actions to correct problems, did not implement change, did not ensure information about the problem was properly disseminated, did not submit relevant information to the appropriate individuals or agencies, and did not properly document all such activities.

(d) Femcare failed to comply with 21 C.F.R. § 820.198 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare failed to maintain complaint files and ensure that they are properly processed, evaluated, corrected and timely reported to the FDA.

(e) Femcare failed to comply with 21 C.F.R. §§ 803.1, 803.10, 803.40, 803.50, and 803.58 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare failed to timely and properly report serious injuries to the FDA.

(f) And Femcare was otherwise careless and negligent when it failed to comply with the conditions set forth in the PMA approval order and/or applicable federal regulatory and statutory law and as a manufacturer and seller under Illinois law, but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law.

84.    If Femcare had complied with its responsibilities under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as a manufacturer and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device, it would not have manufactured, distributed, and sold an unreasonably dangerous device, which, when put to use in a reasonably foreseeable manner, injures consumers when put to its intended use. Femcare would have had properly identified and investigated any defects in its product, ensure that those who are directly responsible for assuring the quality of the product were aware of this defect, and implement a change that would properly address this defect. Furthermore, Femcare

would have properly informed the FDA of these defects and the FDA would have known about the true potential for migration of these Filshie Clips and the dangers patients were exposed to and the injuries that were resulting as a result of the Filshie Clips. The FDA's awareness of any of these matters would have led the FDA to take appropriate and timely actions, including but not limited to changing the labeling on the Filshie Clips, issuing warnings about migration, reviewing the full range of date to make decisions that may have prevented Ms. Wilson from having defective Filshie Clips implanted, ordering a halt of sales to conduct an impartial investigation into these issues and/or ordering a recall on the Filshie Clips.

85. If Femcare had complied with its responsibilities under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as a manufacturer and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device, it would not have manufactured, distributed, and sold an unreasonably dangerous device that caused Ms. Wilson's injuries, nor would it have put the Filshie Clips on the market with outdated, inadequate, or false information about its true risk of migration. If properly warned, the doctors who performed Ms. Wilson's tubal ligation procedure would have known about the true risk of migration and would have been in a better position to protect her from the injuries the Filshie Clips can cause. Similarly, Ms. Wilson never would have agreed to use the Filshie Clips for her tubal ligation had she known of their true propensity to migrate and cause harm she experienced. Even if she chose to have her tubal ligation procedure using the Filshie Clips, she would have been informed and aware of their propensity to migrate (either when she received her tubal ligation procedure or afterwards), thus, having her discover the cause of her injuries, and thus, minimizing her injuries, sooner.

86.     As a result of Femcare's failure to adhere to the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as a manufacturer and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device, Femcare manufactured, sold, or distributed an unreasonably dangerous product without accurate information about its propensity to migrate, which reached Ms. Wilson, without substantial change in condition, and was implanted in accordance of its intended use, in Ms. Wilson. The unreasonably dangerous condition of the Filshie Clips caused it to migrate which caused Ms. Wilson to experience extreme pain in her lower abdominal/pelvic region. Eventually, after years of suffering, Ms. Wilson's doctor confirmed a clip was missing following radiological imaging. She was informed the Filshie Clips remained in her body and were displaced. Ms. Wilson continues to live under the specter of having the foreign bodies migrating through her pelvic area and the fear of having to undergo surgery as a result of these products.

87.     This Count is based solely on Femcare's failure to comply with the conditions set forth in the PMA approval order and the requirements set by federal regulatory and statutory law and does not impose any requirements that are different from, or in additional to, the Femcare's duties as a manufacturer of a Class III medical device approved by the FDA. The violation of these federal and regulatory requirements alone establishes liability under the strict products liability and Plaintiff is seeking a damages remedy to the extent, and only to the extent, that they run parallel to the federal conditions and requirements and are not different from or in addition to the requirements of federal law.

**COUNT 2: FEMCARE – STRICT PRODUCTS LIABILITY - FAILURE TO WARN BASED EXCLUSIVELY ON VIOLATIONS OF 21 C.F.R. §§ PARTS 803, 814 AND 820 *et seq.***

88.     In Illinois law, a strict liability claim must show that (1) the product that caused harm was unreasonably unsafe or dangerous when it was designed, manufactured or distributed; (2) the manufacturer, sell, or distributor expected or intended for the products to reach the consumer without any changes by third parties; and (3) the defective product proximately caused injury. A product is considered unreasonably unsafe or dangerous when (1) the product is unsafe when put to use in an intended or reasonably foreseeable manner; or (2) it is dangerous to an extent beyond that which would be contemplated by the ordinary consumer.

89.     Under a failure to warn theory, a party must show that the defendant knew or should have known the danger.

90.     Further, parallel with federal law, Illinois law treats violations of federal statutes and regulations as establishing a *prima facie* case and as evidence of a party's failure to warn. However, to be clear, under the same facts, Plaintiff would have been able to establish a recoverable claim under Illinois' parallel common law failure to warn, even in the absence of federal law.

91.     Femcare, as a manufacturer, seller, and distributor of products in Illinois, owed a common law duty to comply with all applicable federal laws and regulations.

92.     Femcare, as the manufacturer, seller, and distributor of a Class III medical device, has a duty and is required to comply with and not deviate from federal statutory and regulatory requirements that applied to the Filshie Clips. As a Class III medical device, Femcare was under a continuing duty to monitor its product after premarket approval and to discover and report to the FDA any complaints about the products performance and any adverse health consequences of

which it became aware and that are or may be attributable to the product. Femcare's duties under the FDA regulations and premarket approval conditions are listed and specified as follows:

(a) Pursuant to 21 C.F.R. § 814.82, Femcare, as a manufacturer, seller, and distributor of a Class III medical device, has a duty to adhere to any post approval requirements in the PMA approval order, which "may include": (1) continuing evaluation and period reporting, (2) warnings, hazards, or precautions important to the device to be prominently displayed in the labeling of a device and in advertising, (3) maintenance of records to submit to the FDA to trace patients if such information is necessary to protect public health or if the FDA needs to review the safety of the device; (4) and "such other requirements as FDA determines are necessary to  provide reasonable assurance, or continued reasonable assurance, of the safety and effectiveness of the device." *Id.* at §§ 814.82(a)(2), (3), (5), (6), (9). Any deviation from the post approval requirements is a violation of federal law and also a violation of Illinois common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(b) Pursuant to 21 C.F.R. § 814.84, Femcare, as a manufacturer, seller, and distributor of a Class III medical device, also has a duty to provide the FDA with unpublished reports of data from any clinical investigations or nonclinical laboratory studies involving Filshie Clips and reports on scientific literature concerning the Filshie Clips known to or that reasonably should be known to it and were not previously submitted as a part of the PMA. Any deviation from the PMA approval order, or failure to provide such material to the FDA is a violation of federal law and also a violation of Illinois common law duties as a

manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(c) Pursuant to 21 C.F.R. § 820.100, Femcare, as the manufacturer, seller, and distributor of a Class III medical device, also has a duty to establish and maintain procedures for implementing a corrective and preventative action plan. Femcare is required to be pro-active and investigate the cause of nonconformities and implement effective corrective action to address complaints about the device, which includes but is not limited ensuring information about the problem is disseminated to those directly responsible for the quality of the product. Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as a manufacturer and seller but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(d) Pursuant to 21 C.F.R. § 820.198, Femcare, as the manufacturer, seller, and distributor of a Class III medical device, has a duty to maintain complaint files and ensure that all complaints are properly processed, evaluated, documented, and determined whether the complaint would need to be reported to the FDA (*see* 21 C.F.R. § 803 *et. seq.*) Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as a manufacturer and seller but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(e) Pursuant to 21 C.F.R. §§ 803.1, 803.10, 803.40, 803.50, and 803.58, Femcare, as the manufacturer, importer, distributor and seller of a Class III medical device, has a duty to properly report serious injuries to the FDA. Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as a manufacturer and seller to the

Plaintiff but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

93.     Despite its duties, Femcare manufactured, designed, and/or sold an unsafe and defective product, that was expected to reach the consumer without substantial change in condition, but only to the extent that such Femcare's actions are parallel to and not different from or in addition to the requirement of the federal law in the following ways:

(a) Femcare failed to comply with 21 C.F.R. § 814.82 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare did not adequately adhere to the conditions of approval and post approval requirements that are expected to be in the PMA approval order. Femcare did not properly evaluate, address, or report injury caused by the Filshie Clips. Femcare did not timely or accurately report the higher migration rates to the FDA. Femcare did not provide reasonable assurance, or continued reasonable assurance, of the safety and effectiveness of the device.

(b) Femcare failed to comply with 21 C.F.R. § 814.84 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare failed to properly report any unpublished reports of dates from any clinical or nonclinical studies involving Filshie Clips. Femcare also failed to report scientific literature concerning Filshie Clips.

(c) Femcare failed to comply with 21 C.F.R. § 820.100 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare failed to ensure information

about the problem with the Filshie Clips was properly disseminated and did not submit relevant information to the appropriate individuals or agencies.

(d) Femcare failed to comply with 21 C.F.R. § 820.198 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare failed to maintain complaint files and ensure that they are timely reported to the FDA.

(e) Femcare failed to comply with 21 C.F.R. §§ 803.1, 803.10, 803.40, 803.50, and 803.58 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare failed to timely and properly report serious injuries to the FDA.

(f) And Femcare was otherwise careless and negligent when it failed to comply with the conditions set forth in the PMA approval order and/or applicable federal regulatory and statutory law and as a manufacturer and seller under Illinois law, but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law.

94.    If Femcare had complied with its responsibilities under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as a manufacturer and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device, it would have timely reported incidents of injury, any changes it discovered regarding the Filshie Clip's propensity to migrate, related studies, and scientific literature to the FDA. The FDA's awareness of any of these matters would have led the FDA to take appropriate and timely actions, including but not limited to changing the labeling on the Filshie Clips, issuing warnings about

migration, reviewing the full range of date to make decisions that may have prevented Ms. Wilson from having defective Filshie Clips implanted, ordering a halt of sales to conduct an impartial investigation into these issues and/or ordering a recall on the Filshie Clips.

95.    If Femcare had complied with its responsibilities under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as a manufacturer and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device, it would ensured the FDA, the medical community, and the public would have known about the risks of migration, either by timely warning the FDA or by properly executing a corrective and preventative action plan that could ensure medical community and/or public would be aware of the dangers of these products. If properly warned, the doctors who performed Ms. Wilson's tubal ligation procedure would have known about the true risk of migration and would have been in a better position to protect her from the injuries the Filshie Clips can cause. Similarly, Ms. Wilson never would have agreed to use the Filshie Clips for her tubal ligation had she known of their true propensity to migrate and cause harm she experienced. Even if she chose to have her tubal ligation procedure using the Filshie Clips, she would have been informed and aware of their propensity to migrate (either when she received her tubal ligation procedure or afterwards), thus, having her discover the cause of her injuries, and thus, minimizing her injuries, sooner.

96.    As a result of Femcare's failure to adhere to the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as a manufacturer and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device, it failed to adequately warn the FDA, the medical community, and the public of the dangers of the

product, which led to Ms. Wilson being implanted with the Filshie Clips, without being aware of its propensity to migrate. The Filshie Clips migrated which caused her to experience extreme pain in her lower abdominal/pelvic region. For years, she did not know the cause of her pain. Eventually, after years of suffering, Ms. Wilson's doctor confirmed a clip was missing following radiological imaging. She was informed the Filshie Clips remained in her body and were displaced. Ms. Wilson continues to live under the specter of having the foreign bodies migrating through her pelvic area and the fear of having to undergo surgery as a result of these products.

97.     This Count is based solely on Femcare's failure to comply with the conditions set forth in the PMA approval order and the requirements set by federal regulatory and statutory law and does not impose any requirements that are different from, or in additional to, the Femcare's duties as a manufacturer of a Class III medical device approved by the FDA. The violation of these federal and regulatory requirements alone establishes liability under the theory of failure to warn and Plaintiff is seeking a damages remedy to the extent, and only to the extent, that they run parallel to the federal conditions and requirements and are not different from or in addition to the requirements of federal law.

### COUNT 3: FEMCARE – PRODUCTS LIABILITY -- NEGLIGENCE BASED EXCLUSIVELY ON VIOLATIONS OF 21 C.F.R. §§ PARTS 803, 814 AND 820 *et seq.*

98.     To prevail on a common law negligence theory in Illinois, one must prove the traditional elements of (1) duty, (2) breach of duty, (3) causation, and (4) injury.

99.     Further, parallel with federal law, Illinois law treats violations of federal statutes and regulations as establishing a *prima facie* case and as evidence of common law negligence. However, to be clear, under the same facts, Plaintiff would have been able to establish a

recoverable claim under Illinois' parallel common law negligence, even in the absence of federal law.

100.    Femcare, as a manufacturer, seller, and distributor of products in Illinois, owed a common law duty to comply with all applicable federal laws and regulations.

101.    Femcare, as the manufacturer, seller, and distributor of a Class III medical device, has a duty and is required to comply with and not deviate from federal statutory and regulatory requirements that applied to the Filshie Clips. As a Class III medical device, Femcare was under a continuing duty to monitor its product after premarket approval and to discover and report to the FDA any complaints about the products performance and any adverse health consequences of which it became aware and that are or may be attributable to the product. Femcare's duties under the FDA regulations and premarket approval conditions are listed and specified as follows:

(a) Pursuant to 21 C.F.R. § 814.80, Femcare, as a manufacturer, seller, and distributor of a Class III medical device, has a duty to manufacture, package, store, label, distribute and advertise the Filshie clip consistent with the conditions of approval specified by the PMA process. Any deviation from the PMA approval order was a violation of federal law and also a violation of Illinois common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(b) Pursuant to 21 C.F.R. § 814.82, Femcare, as a manufacturer, seller, and distributor of a Class III medical device, also has a duty to adhere to any post approval requirements in the PMA approval order, which "may include": (1) continuing evaluation and period reporting, (2) warnings, hazards, or precautions important to the device to be prominently displayed in the labeling of a device and in advertising, (3) maintenance of records to submit to the

FDA to trace patients if such information is necessary to protect public health or if the FDA needs to review the safety of the device; (4) and "such other requirements as FDA determines are necessary to  provide reasonable assurance, or continued reasonable assurance, of the safety and effectiveness of the device." *Id.* at §§ 814.82(a)(2), (3), (5), (6), (9). Any deviation from the post approval requirements is a violation of federal law and also a violation of Illinois common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(c) Pursuant to 21 C.F.R. § 814.84, Femcare, as a manufacturer, seller, and distributor of a Class III medical device, also has a duty to provide the FDA with unpublished reports of data from any clinical investigations or nonclinical laboratory studies involving Filshie Clips and reports on scientific literature concerning the Filshie Clips known to or that reasonably should be known to it and were not previously submitted as a part of the PMA. Any deviation from the PMA approval order, or failure to provide such material to the FDA is a violation of federal law and also a violation of Illinois common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(d) Pursuant to 21 C.F.R. § 820.100, Femcare, as the manufacturer, seller, and distributor of a Class III medical device, also has a duty to establish and maintain procedures for implementing a corrective and preventative action plan. Femcare is required to be pro-active and investigate the cause of nonconformities and implement effective corrective action to address complaints about the device, which includes but is not limited to investigating nonconformities, identifying actions to correct problems, verifying the

corrective or preventative action, implementing change, ensuring information about the problem is disseminated to those directly responsible for the quality of the product, submitting relevant information to management, and documenting all such activities. Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as a manufacturer and seller but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(e) Pursuant to 21 C.F.R. § 820.198, Femcare, as the manufacturer, seller, and distributor of a Class III medical device, has a duty to maintain complaint files and ensure that all complaints are properly processed, evaluated, documented, and determined whether the complaint would need to be reported to the FDA (*see* 21 C.F.R. § 803 *et. seq.*) Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as a manufacturer and seller but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(f) Pursuant to 21 C.F.R. §§ 803.1, 803.10, 803.40, 803.50, and 803.58, Femcare, as the manufacturer, importer, distributor and seller of a Class III medical device, has a duty to properly report serious injuries to the FDA. Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as a manufacturer and seller to the Plaintiff but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

102.    Femcare manufactured, designed, and/or sold a defective and dangerous product, that was, but only to the extent that such Femcare's actions are parallel to and not different from or in addition to the requirement of the federal law. Femcare breached its duties in the following ways:

(a) Femcare failed to comply with 21 C.F.R. §§ 814.80 and 814.82 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare did not adequately adhere to the conditions of approval and post approval requirements that are expected to be in the PMA approval order. Femcare did not properly evaluate, address, or report injury caused by the Filshie Clips. Femcare did not timely or accurately report the higher migration rates to the FDA. Femcare did not provide reasonable assurance, or continued reasonable assurance, of the safety and effectiveness of the device.

(b) Femcare failed to comply with 21 C.F.R. § 814.84 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare failed to properly report any unpublished reports of dates from any clinical or nonclinical studies involving Filshie Clips. Femcare also failed to report scientific literature concerning Filshie Clips.

(c) Femcare failed to comply with 21 C.F.R. § 820.100 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare failed to establish and maintain procedures for implementing a corrective and preventative action plan. Femcare did not proactively and adequately investigate complaints it received about the Filshie Clips, did not identify actions to correct problems, did not implement change, did not ensure information about the problem was properly disseminated, did not submit relevant information to the appropriate individuals or agencies, and did not properly document all such activities.

(d) Femcare failed to comply with 21 C.F.R. § 820.198 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare failed to maintain complaint files and ensure that they are properly processed, evaluated, corrected and timely reported to the FDA.

(e) Femcare failed to comply with 21 C.F.R. §§ 803.1, 803.10, 803.40, 803.50, and 803.58 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare failed to timely and properly report serious injuries to the FDA.

(f) And Femcare was otherwise careless and negligent when it failed to comply with the conditions set forth in the PMA approval order and/or applicable federal regulatory and statutory law and as a manufacturer and seller under Illinois law, but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law.

103.    Femcare's breach of its duties and responsibilities under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as a manufacturer and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device, was the direct and proximate cause of Plaintiff's injuries. Femcare sold and distributed a product that caused injures to consumers in violation of federal regulatory and statutory regulations. Had Femcare complied with its federal regulatory and statutory duties, it would have had properly identified and investigated any defects in its product, ensure that those who are directly responsible for assuring the quality of the product were aware of this defect, and implement a change that

would properly address this defect. Furthermore, Femcare would have timely and accurately informed the FDA of these complaints, the true potential for migration, and the dangers patients were exposed to and the injuries that were resulting as a result of the Filshie Clips. The FDA's awareness of any of these matters would have led the FDA to take appropriate and timely actions, including but not limited to changing the labeling on the Filshie Clips, issuing warnings about migration, reviewing the full range of date to make decisions that may have prevented Ms. Wilson from having defective Filshie Clips implanted, ordering a halt of sales to conduct an impartial investigation into these issues and/or ordering a recall on the Filshie Clips.

104.    Femcare's breach of its duties and responsibilities under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as a manufacturer and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device, was the direct and proximate cause of Plaintiff's injuries. Femcare sold and distributed a product that caused injures to consumers in violation of federal regulatory and statutory regulations. Had Femcare complied with its federal regulatory and statutory duties, the doctors who performed Ms. Wilson's tubal ligation procedure would have known about the true risk of migration and would have been in a better position to protect her from the injuries the Filshie Clips can cause. Similarly, Ms. Wilson never would have agreed to use the Filshie Clips for her tubal ligation had she known of their true propensity to migrate and cause harm she experienced. Even if she chose to have her tubal ligation procedure using the Filshie Clips, she would have been informed and aware of their propensity to migrate (either when she received her tubal ligation procedure or afterwards), thus, having her discover the cause of her injuries, and thus, minimizing her injuries, sooner.

105.    As a direct and proximate cause of the negligence and carelessness of Femcare to adhere to the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as a manufacturer and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device, the Filshie Clips were implanted in Ms. Wilson. The Filshie Clips migrated which caused her to experience extreme pain in her lower abdominal/pelvic region. For years, she did not know the cause of her pain. Eventually, Ms. Wilson's doctor confirmed a clip was missing following radiological imaging. She was informed the Filshie Clips remained in her body and were displaced. Ms. Wilson continues to live under the specter of having the foreign bodies migrating through her pelvic area and the fear of having to undergo surgery as a result of these products.

106.    This Count is based solely on Femcare's failure to comply with the conditions set forth in the PMA approval order and the requirements set by federal regulatory and statutory law and does not impose any requirements that are different from, or in additional to, the Femcare's duties as a manufacturer of a Class III medical device approved by the FDA. The violation of these federal and regulatory requirements alone establishes liability under the theory of negligence and Plaintiff is seeking a damages remedy for negligence to the extent, and only to the extent, that they run parallel to the federal conditions and requirements and are not different from or in addition to the requirements of federal law.

### <u>COUNT 4</u>: FEMCARE – GROSS NEGLIGENCE BASED EXCLUSIVELY ON VIOLATIONS OF 21 C.F.R. §§ PARTS 803, 814 AND 820 *et seq*

107.    To prevail on a negligence theory requires proof of the traditional elements of (1) duty, (2) breach of duty, (3) causation, and (4) injury. Gross negligence means a high degree of negligence, an element of recklessness and absence of the slightest degree of care.

108.    Further, parallel with federal law, Illinois law treats violations of federal statutes and regulations as establishing a *prima facie* case and as evidence of common law negligence and gross negligence. However, to be clear, under the same facts, Plaintiff would have been able to establish a recoverable claim under Illinois' parallel common law gross negligence, even in the absence of federal law.

109.    Femcare, as a manufacturer, seller, and distributor of products in Illinois, owed a common law duty to comply with all applicable federal laws and regulations.

110.    Femcare, as the manufacturer, seller, and distributor of a Class III medical device, has a duty and is required to comply with and not deviate from federal statutory and regulatory requirements that applied to the Filshie Clips. As a Class III medical device, Femcare was under a continuing duty to monitor its product after premarket approval and to discover and report to the FDA any complaints about the products performance and any adverse health consequences of which it became aware and that are or may be attributable to the product. Femcare's duties under the FDA regulations and premarket approval conditions are listed and specified as follows:

(a) Pursuant to 21 C.F.R. § 814.80, Femcare, as a manufacturer, seller, and distributor of a Class III medical device, has a duty to manufacture, package, store, label, distribute and advertise the Filshie clip consistent with the conditions of approval specified by the PMA process. Any deviation from the PMA approval order was a violation of federal law and also a violation of Illinois common law duties as a manufacturer and seller, but only to the

extent that they are parallel to and not different from or in addition to the requirements of federal law.

(b) Pursuant to 21 C.F.R. § 814.82, Femcare, as a manufacturer, seller, and distributor of a Class III medical device, also has a duty to adhere to any post approval requirements in the PMA approval order, which "may include": (1) continuing evaluation and period reporting, (2) warnings, hazards, or precautions important to the device to be prominently displayed in the labeling of a device and in advertising, (3) maintenance of records to submit to the FDA to trace patients if such information is necessary to protect public health or if the FDA needs to review the safety of the device; (4) and "such other requirements as FDA determines are necessary to provide reasonable assurance, or continued reasonable assurance, of the safety and effectiveness of the device." *Id.* at §§ 814.82(a)(2), (3), (5), (6), (9). Any deviation from the post approval requirements is a violation of federal law and also a violation of Illinois common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(c) Pursuant to 21 C.F.R. § 814.84, Femcare, as a manufacturer, seller, and distributor of a Class III medical device, also has a duty to provide the FDA with unpublished reports of data from any clinical investigations or nonclinical laboratory studies involving Filshie Clips and reports on scientific literature concerning the Filshie Clips known to or that reasonably should be known to it and were not previously submitted as a part of the PMA. Any deviation from the PMA approval order, or failure to provide such material to the FDA is a violation of federal law and also a violation of Illinois common law duties as a

manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(d) Pursuant to 21 C.F.R. § 820.100, Femcare, as the manufacturer, seller, and distributor of a Class III medical device, also has a duty to establish and maintain procedures for implementing a corrective and preventative action plan. Femcare is required to be pro-active and investigate the cause of nonconformities and implement effective corrective action to address complaints about the device, which includes but is not limited to investigating nonconformities, identifying actions to correct problems, verifying the corrective or preventative action, implementing change, ensuring information about the problem is disseminated to those directly responsible for the quality of the product, submitting relevant information to management, and documenting all such activities. Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as a manufacturer and seller but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(e) Pursuant to 21 C.F.R. § 820.198, Femcare, as the manufacturer, seller, and distributor of a Class III medical device, has a duty to maintain complaint files and ensure that all complaints are properly processed, evaluated, documented, and determined whether the complaint would need to be reported to the FDA (*see* 21 C.F.R. § 803 *et. seq.*) Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as a manufacturer and seller but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(f) Pursuant to 21 C.F.R. §§ 803.1, 803.10, 803.40, 803.50, and 803.58, Femcare, as the manufacturer, importer, distributor and seller of a Class III medical device, has a duty to

properly report serious injuries to the FDA. Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as a manufacturer and seller to the Plaintiff but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

111.   Femcare manufactured, designed, and/or sold an unsafe and defective product, that was expected to reach the consumer without substantial change in condition, but only to the extent that such Femcare's actions are parallel to and not different from or in addition to the requirement of the federal law. Femcare breached its duties in the following ways:

(a) Femcare failed to comply with 21 C.F.R. §§ 814.80 and 814.82 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare did not adequately adhere to the conditions of approval and post approval requirements that are expected to be in the PMA approval order. Femcare did not properly evaluate, address, or report injury caused by the Filshie Clips. Femcare did not timely or accurately report the higher migration rates to the FDA. Femcare did not provide reasonable assurance, or continued reasonable assurance, of the safety and effectiveness of the device.

(b) Femcare failed to comply with 21 C.F.R. § 814.84 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare failed to properly report any unpublished reports of dates from any clinical or nonclinical studies involving Filshie Clips. Femcare also failed to report scientific literature concerning Filshie Clips.

(c) Femcare failed to comply with 21 C.F.R. § 820.100 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different

from or in addition to the requirements of federal law. Femcare failed to establish and maintain procedures for implementing a corrective and preventative action plan. Femcare did not proactively and adequately investigate complaints it received about the Filshie Clips, did not identify actions to correct problems, did not implement change, did not ensure information about the problem was properly disseminated, did not submit relevant information to the appropriate individuals or agencies, and did not properly document all such activities.

(d) Femcare failed to comply with 21 C.F.R. § 820.198 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare failed to maintain complaint files and ensure that they are properly processed, evaluated, corrected and timely reported to the FDA.

(e) Femcare failed to comply with 21 C.F.R. §§ 803.1, 803.10, 803.40, 803.50, and 803.58 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare failed to timely and properly report serious injuries to the FDA.

(f) And Femcare was otherwise careless and negligent when it failed to comply with the conditions set forth in the PMA approval order and/or applicable federal regulatory and statutory law and as a manufacturer and seller under Illinois law, but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law.

112.    Femcare's breach of its duties and responsibilities under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as a manufacturer and

seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device, was the direct and proximate cause of Plaintiff's injuries. Femcare sold and distributed a product that caused injures to consumers in violation of federal regulatory and statutory regulations. Had Femcare complied with its federal regulatory and statutory duties, it would have had properly identified and investigated any defects in its product, ensure that those who are directly responsible for assuring the quality of the product were aware of this defect, and implement a change that would properly address this defect. Furthermore, Femcare would have timely and accurately informed the FDA of these complaints, the true potential for migration, and the dangers patients were exposed to and the injuries that were resulting as a result of the Filshie Clips. The FDA's awareness of any of these matters would have led the FDA to take appropriate and timely actions, including but not limited to changing the labeling on the Filshie Clips, issuing warnings about migration, reviewing the full range of date to make decisions that may have prevented Ms. Wilson from having defective Filshie Clips implanted, ordering a halt of sales to conduct an impartial investigation into these issues and/or ordering a recall on the Filshie Clips.

113.    Femcare's breach of its duties and responsibilities under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as a manufacturer and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device, was the direct and proximate cause of Plaintiff's injuries. Femcare sold and distributed a product that caused injures to consumers in violation of federal regulatory and statutory regulations. Had Femcare complied with its federal regulatory and statutory duties, the doctors who performed Ms. Wilson's tubal ligation procedure would have known about the true risk of migration and would

have been in a better position to protect her from the injuries the Filshie Clips can cause. Similarly, Ms. Wilson never would have agreed to use the Filshie Clips for her tubal ligation had she known of their true propensity to migrate and cause harm she experienced. Even if she chose to have her tubal ligation procedure using the Filshie Clips, she would have been informed and aware of their propensity to migrate (either when she received her tubal ligation procedure or afterwards), thus, having her discover the cause of her injuries, and thus, minimizing her injuries, sooner.

114.     As a direct and proximate cause of the negligence and carelessness of Femcare to adhere to the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as a manufacturer and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device, the Filshie Clips were implanted in Ms. Wilson. The Filshie Clips migrated which caused her to experience extreme pain in her lower abdominal/pelvic region. Eventually, after years of suffering, Ms. Wilson's doctor confirmed a clip was missing following radiological imaging. She was informed the Filshie Clips remained in her body and were displaced. Ms. Wilson continues to live under the specter of having the foreign bodies migrating through her pelvic area and the fear of having to undergo surgery as a result of these products.

115.     Furthermore, Femcare had knowledge of the probable consequences of not taking care, as well as an reckless indifference to the consequences of not adhering to the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as a manufacturer and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device. The reason the FDA requires manufacturers like Femcare to obtain Class III approval before allowing medical devices to be available to the public is because these products are potentially

dangerous if they are defective or misused. The stringent requirements under the FDA regulations and the PMA approval order are to protect the public from potentially dangerous situations where a medical device that is implanted in a patient's body will malfunction. Furthermore, Femcare has, for years, received complaints about its Filshie Clips migrating and causing pain, harm, and further injuries to women. Each time Femcare has received a complaint, it was aware of the consequences of its defective products causing real harm to real patients.

116.    However, despite this knowledge, Femcare knowingly and recklessly failed to adhere to its obligations under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as a manufacturer and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device, with a conscious indifference to the rights, safety, or welfare of others. Femcare's acts and omissions, constitute gross negligence that proximately caused the injuries to Plaintiff.

117.    This Count is based solely on Femcare's failure to comply with the conditions set forth in the PMA approval order and the requirements set by federal regulatory and statutory law and does not impose any requirements that are different from, or in additional to, the Femcare's duties as a manufacturer of a Class III medical device approved by the FDA. The violation of these federal and regulatory requirements alone establishes liability under the theory of gross negligence and Plaintiff is seeking punitive damages to the extent, and only to the extent, that they run parallel to the federal conditions and requirements and are not different from or in addition to the requirements of federal law.

**COUNT 5: FEMCARE – PUNITIVE DAMAGES BASED EXCLUSIVELY ON VIOLATIONS OF 21 C.F.R. §§ PARTS 803, 814 AND 820 *et seq***

118.    In Illinois, punitive damages can be awarded when one's wrongful conduct is characterized by wantonness, malice, oppression, willfulness, or other circumstance of aggravation with a reckless indifference to the right of others.

119.    Further, parallel with federal law, Illinois law treats violations of federal statutes and regulations as establishing a *prima facie* case and as evidence of common law claims such as gross negligence and oppression, fraud, wantonness, or malice. However, to be clear, under the same facts, Plaintiff would have been able to establish a recoverable claim for punitive damages under Illinois' parallel common law, even in the absence of federal law.

120.    Femcare, as a manufacturer, seller, and distributor of products in Illinois, owed a common law duty to comply with all applicable federal laws and regulations.

121.    Femcare, as the manufacturer, seller, and distributor of a Class III medical device, has a duty and is required to comply with and not deviate from federal statutory and regulatory requirements that applied to the Filshie Clips. As a Class III medical device, Femcare was under a continuing duty to monitor its product after premarket approval and to discover and report to the FDA any complaints about the products performance and any adverse health consequences of which it became aware and that are or may be attributable to the product. Femcare's duties under the FDA regulations and premarket approval conditions are listed and specified as follows:

(a) Pursuant to 21 C.F.R. § 814.80, Femcare, as a manufacturer, seller, and distributor of a Class III medical device, has a duty to manufacture, package, store, label, distribute and advertise the Filshie clip consistent with the conditions of approval specified by the PMA process. Any deviation from the PMA approval order was a violation of federal law and also a violation of Illinois common law duties as a manufacturer and seller, but only to the

extent that they are parallel to and not different from or in addition to the requirements of federal law.

(b) Pursuant to 21 C.F.R. § 814.82, Femcare, as a manufacturer, seller, and distributor of a Class III medical device, also has a duty to adhere to any post approval requirements in the PMA approval order, which "may include": (1) continuing evaluation and period reporting, (2) warnings, hazards, or precautions important to the device to be prominently displayed in the labeling of a device and in advertising, (3) maintenance of records to submit to the FDA to trace patients if such information is necessary to protect public health or if the FDA needs to review the safety of the device; (4) and "such other requirements as FDA determines are necessary to  provide reasonable assurance, or continued reasonable assurance, of the safety and effectiveness of the device." *Id.* at §§ 814.82(a)(2), (3), (5), (6), (9). Any deviation from the post approval requirements is a violation of federal law and also a violation of Illinois common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(c) Pursuant to 21 C.F.R. § 814.84, Femcare, as a manufacturer, seller, and distributor of a Class III medical device, also has a duty to provide the FDA with unpublished reports of data from any clinical investigations or nonclinical laboratory studies involving Filshie Clips and reports on scientific literature concerning the Filshie Clips known to or that reasonably should be known to it and were not previously submitted as a part of the PMA. Any deviation from the PMA approval order, or failure to provide such material to the FDA is a violation of federal law and also a violation of Illinois common law duties as a

manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(d) Pursuant to 21 C.F.R. § 820.100, Femcare, as the manufacturer, seller, and distributor of a Class III medical device, also has a duty to establish and maintain procedures for implementing a corrective and preventative action plan. Femcare is required to be pro-active and investigate the cause of nonconformities and implement effective corrective action to address complaints about the device, which includes but is not limited to investigating nonconformities, identifying actions to correct problems, verifying the corrective or preventative action, implementing change, ensuring information about the problem is disseminated to those directly responsible for the quality of the product, submitting relevant information to management, and documenting all such activities. Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as a manufacturer and seller but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(e) Pursuant to 21 C.F.R. § 820.198, Femcare, as the manufacturer, seller, and distributor of a Class III medical device, has a duty to maintain complaint files and ensure that all complaints are properly processed, evaluated, documented, and determined whether the complaint would need to be reported to the FDA (*see* 21 C.F.R. § 803 *et. seq.*) Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as a manufacturer and seller but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(f) Pursuant to 21 C.F.R. §§ 803.1, 803.10, 803.40, 803.50, and 803.58, Femcare, as the manufacturer, importer, distributor and seller of a Class III medical device, has a duty to

properly report serious injuries to the FDA. Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as a manufacturer and seller to the Plaintiff but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

122.   Femcare manufactured, designed, and/or sold an unsafe and defective product, that was expected to reach the consumer without substantial change in condition, but only to the extent that such Femcare's actions are parallel to and not different from or in addition to the requirement of the federal law. Femcare breached its duties in the following ways:

(a) Femcare failed to comply with 21 C.F.R. §§ 814.80 and 814.82 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare did not adequately adhere to the conditions of approval and post approval requirements that are expected to be in the PMA approval order. Femcare did not properly evaluate, address, or report injury caused by the Filshie Clips. Femcare did not timely or accurately report the higher migration rates to the FDA. Femcare did not provide reasonable assurance, or continued reasonable assurance, of the safety and effectiveness of the device.

(b) Femcare failed to comply with 21 C.F.R. § 814.84 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare failed to properly report any unpublished reports of dates from any clinical or nonclinical studies involving Filshie Clips. Femcare also failed to report scientific literature concerning Filshie Clips.

(c) Femcare failed to comply with 21 C.F.R. § 820.100 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different

from or in addition to the requirements of federal law. Femcare failed to establish and maintain procedures for implementing a corrective and preventative action plan. Femcare did not proactively and adequately investigate complaints it received about the Filshie Clips, did not identify actions to correct problems, did not implement change, did not ensure information about the problem was properly disseminated, did not submit relevant information to the appropriate individuals or agencies, and did not properly document all such activities.

(d) Femcare failed to comply with 21 C.F.R. § 820.198 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare failed to maintain complaint files and ensure that they are properly processed, evaluated, corrected and timely reported to the FDA.

(e) Femcare failed to comply with 21 C.F.R. §§ 803.1, 803.10, 803.40, 803.50, and 803.58 and Illinois' common law duties as a manufacturer and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. Femcare failed to timely and properly report serious injuries to the FDA.

(f) And Femcare was otherwise careless and negligent when it failed to comply with the conditions set forth in the PMA approval order and/or applicable federal regulatory and statutory law and as a manufacturer and seller under Illinois law, but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law.

123.    Femcare's breach of its duties and responsibilities under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as a manufacturer and

seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device, was the direct and proximate cause of Plaintiff's injuries. Femcare failed to comply with applicable federal regulatory and statutory regulation when it manufactured, marketed, sold, and distributed a product that caused injures to consumers and did not properly investigate or remedy the defective product. Had Femcare complied with its federal regulatory and statutory duties, the FDA would have known about the true potential for migration of these Filshie Clips and the dangers patients were exposed to and the injuries that were resulting as a result of the Filshie Clips. The FDA's awareness of any of these matters would have led the FDA to take appropriate and timely actions, including but not limited to changing the labeling on the Filshie Clips, issuing warnings about migration, reviewing the full range of date to make decisions that may have prevented Wilson from having defective Filshie Clips implanted, ordering a halt of sales to conduct an impartial investigation into these issues and/or ordering a recall on the Filshie Clips.

124.    Femcare's breach of its duties and responsibilities under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as a manufacturer and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device, was the direct and proximate cause of Plaintiff's injuries. Femcare sold and distributed a product that caused injures to consumers in violation of federal regulatory and statutory regulations. Had Femcare complied with its federal regulatory and statutory duties, the doctors who performed Ms. Wilson's tubal ligation procedure would have known about the true risk of migration and would have been in a better position to protect her from the injuries the Filshie Clips can cause. Similarly, Ms. Wilson never would have agreed to use the Filshie Clips for her tubal ligation had she known

of their true propensity to migrate and cause harm she experienced. Even if she chose to have her tubal ligation procedure using the Filshie Clips, she would have been informed and aware of their propensity to migrate (either when she received her tubal ligation procedure or afterwards), thus, having her discover the cause of her injuries, and thus, minimizing her injuries, sooner.

125.    As a direct and proximate cause of the negligence and carelessness of Femcare to adhere to the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as a manufacturer and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device, the Filshie Clips were implanted in Ms. Wilson. The Filshie Clips migrated which caused her to experience extreme pain in her lower abdominal/pelvic region. For years, she did not know the cause of her pain. Eventually, after years of suffering, Ms. Wilson's doctor confirmed a clip was missing following radiological imaging. She was informed the Filshie Clips remained in her body and were displaced. Ms. Wilson continues to live under the specter of having the foreign bodies migrating through her pelvic area and the fear of having to undergo surgery as a result of these products.

126.    Furthermore, Femcare had knowledge of the probable consequences of not taking care, as well as an indifference to the consequences of not adhering to the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as a manufacturer and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device. The reason the FDA requires manufacturers like Femcare to obtain Class III approval before allowing medical devices to be available to the public is because these products are potentially dangerous if they are defective or misused. The stringent requirements under the FDA regulations

and the PMA approval order are to protect the public from potentially dangerous situations where a medical device that is implanted in a patient's body will malfunction. Furthermore, Femcare has, for years, received complaints about its Filshie Clips migrating and causing pain, harm, and further injuries to women. Each time Femcare has received a complaint, it was aware of the consequences of its defective products causing real harm to real patients.

127.    However, despite this knowledge, Femcare knowingly failed to adhere to its obligations under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as a manufacturer and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device, with a conscious indifference to the rights, safety, or welfare of others. Femcare's acts and omissions, constitute gross negligence that proximately caused the injuries to Plaintiff. The conduct of actively failing to adequately investigate the migration problem, avoiding informing the FDA of the much higher migration rate of the Filshie Clips, and failing to inform the medical community and public of the dangers of the Filshie Clips, was not only a violation of the FDA regulatory requirements, but was carried on with a reckless or conscious disregard of the rights and safety of others. In that regard, Plaintiff will seek punitive damages in an amount that would punish Femcare for its conduct and which would deter other manufacturers from engaging in such misconduct in the future.

128.    This Count is based solely on Femcare's failure to comply with the conditions set forth in the PMA approval order and the requirements set by federal regulatory and statutory law and does not impose any requirements that are different from, or in additional to, the Femcare's duties as a manufacturer of a Class III medical device approved by the FDA. The violation of these federal and regulatory requirements alone establishes a showing of fraud, malice, wantonness and

oppression and Plaintiff is seeking punitive damages to the extent, and only to the extent, that they run parallel to the federal conditions and requirements and are not different from or in addition to the requirements of federal law.

## COUNT 6: COOPERSURGICAL AND UTAH MEDICAL – STRICT PRODUCTS LIABILITY – DESIGN DEFECT BASED EXCLUSIVELY ON VIOLATIONS OF 21 C.F.R. §§ PARTS 803, 814 AND 820 *et seq.*

129.    In Illinois law, a strict liability claim must show that (1) the product that caused harm was unreasonably unsafe or dangerous when it was designed, manufactured or distributed; (2) the manufacturer, sell, or distributor expected or intended for the products to reach the consumer without any changes by third parties; and (3) the defective product proximately caused injury. A design defect occurs when a product conforms to the intended design but the intended design itself renders the product unreasonably dangerous. A product is considered unreasonably unsafe or dangerous when (1) the product is unsafe when put to use in an intended or reasonably foreseeable manner; or (2) it is dangerous to an extent beyond that which would be contemplated by the ordinary consumer.

130.    Further, parallel with federal law, Illinois law treats violations of federal statutes and regulations as establishing a *prima facie* case and as evidence of a products liability claim. However, to be clear, under the same facts, Plaintiff would have been able to establish a recoverable claim under Illinois' strict products liability laws, even in the absence of federal law.

131.    CooperSurgical and Utah Medical, as an importers, sellers, and distributors of products in Illinois, owed a common law duty to comply with all applicable federal laws and regulations.

132.    CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, have a duty and are required to comply with and not deviate from federal

statutory and regulatory requirements that applied to the Filshie Clips. As a Class III medical device, CooperSurgical and Utah Medical were under a continuing duty to monitor their product after premarket approval and to discover and report to the FDA any complaints about the products performance and any adverse health consequences of which they became aware and that are or may be attributable to the product. CooperSurgical's and Utah Medical's duties under the FDA regulations and premarket approval conditions are listed and specified as follows:

(a) Pursuant to 21 C.F.R. § 814.80, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, have a duty to package, store, label, distribute and advertise the Filshie clip consistent with the conditions of approval specified by the PMA process. Any deviation from the PMA approval order was a violation of federal law and also a violation of Illinois common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(b) Pursuant to 21 C.F.R. § 814.82, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, also have a duty to adhere to any post approval requirements in the PMA approval order, which "may include": (1) continuing evaluation and period reporting, (2) warnings, hazards, or precautions important to the device to be prominently displayed in the labeling of a device and in advertising, (3) maintenance of records to submit to the FDA to trace patients if such information is necessary to protect public health or if the FDA needs to review the safety of the device; (4) and "such other requirements as FDA determines are necessary to provide reasonable assurance, or continued reasonable assurance, of the safety and effectiveness of the device." *Id.* at §§ 814.82(a)(2), (3), (5), (6), (9). Any deviation from the post approval

requirements is a violation of federal law and also a violation of Illinois common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(c) Pursuant to 21 C.F.R. § 820.100, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, also have a duty to establish and maintain procedures for implementing a corrective and preventative action plan. CooperSurgical and Utah Medical are required to be pro-active and investigate the cause of nonconformities and implement effective corrective action to address complaints about the device, which includes but is not limited to investigating nonconformities, identifying actions to correct problems, verifying the corrective or preventative action, implementing change, ensuring information about the problem is disseminated to those directly responsible for the quality of the product, submitting relevant information to management, and documenting all such activities. Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as an importer, seller, and distributor but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(d) Pursuant to 21 C.F.R. § 820.198, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, have a duty to maintain complaint files and ensure that all complaints are properly processed, evaluated, documented, and determined whether the complaint would need to be reported to the FDA (*see* 21 C.F.R. § 803 *et. seq.*) Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as an importer, seller, and distributor but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(e) Pursuant to 21 C.F.R. §§ 803.1, 803.10, 803.50, and 803.58, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, have a duty to properly report serious injuries to the FDA. Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as an importer, seller, and distributor to the Plaintiff but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

133.    Despite their duties, CooperSurgical and Utah Medical imported, sold, and distributed an unreasonably dangerous product, that was expected to reach the consumer without substantial change in condition, but only to the extent that such CooperSurgical's and Utah Medical's actions are parallel to and not different from or in addition to the requirement of the federal law in the following ways:

(a) CooperSurgical and Utah Medical failed to comply with 21 C.F.R. §§ 814.80 and 814.82 and Illinois' common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. CooperSurgical and Utah Medical did not adequately adhere to the conditions of approval and post approval requirements that are expected to be in the PMA approval order. CooperSurgical and Utah Medical did not properly evaluate, address, or report injury caused by the Filshie Clips. CooperSurgical and Utah Medical did not timely or accurately report the higher migration rates to the FDA. CooperSurgical and Utah Medical did not provide reasonable assurance, or continued reasonable assurance, of the safety and effectiveness of the device.

(b) CooperSurgical and Utah Medical failed to comply with 21 C.F.R. § 820.100 and Illinois' common law duties as an importer, seller, and distributor, but only to the extent that they

are parallel to and not different from or in addition to the requirements of federal law. CooperSurgical and Utah Medical failed to establish and maintain procedures for implementing a corrective and preventative action plan. CooperSurgical and Utah Medical did not proactively and adequately investigate complaints it received about the Filshie Clips, did not identify actions to correct problems, did not implement change, did not ensure information about the problem was properly disseminated, did not submit relevant information to the appropriate individuals or agencies, and did not properly document all such activities.

(c) CooperSurgical and Utah Medical failed to comply with 21 C.F.R. § 820.198 and Illinois' common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. CooperSurgical and Utah Medical failed to maintain complaint files and ensure that they are properly processed, evaluated, corrected and timely reported to the FDA.

(d) CooperSurgical and Utah Medical failed to comply with 21 C.F.R. §§ 803.1, 803.10, 803.40, and 803.58 and Illinois' common law duties as a seller, importer and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. CooperSurgical and Utah Medical failed to timely and properly report serious injuries to the FDA.

(e) And CooperSurgical and Utah Medical were otherwise careless and negligent when it failed to comply with the conditions set forth in the PMA approval order and/or applicable federal regulatory and statutory law and as an importer, seller, and distributor under Illinois law, but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law.

134.    If CooperSurgical and Utah Medical had complied with its responsibilities under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as an importer, distributor, and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device, it would not have imported, sold, and distributed, and sold an unreasonably dangerous device, which injures consumers when put to its intended use. CooperSurgical and Utah Medical would have had properly identified and investigated any defects in its product, ensure that those who are directly responsible for assuring the quality of the product were aware of this defect, and implement a change that would properly address this defect. Furthermore, CooperSurgical and Utah Medical would have properly informed the FDA of these defects and the FDA would have known about the true potential for migration of these Filshie Clips and the dangers patients were exposed to and the injuries that were resulting as a result of the Filshie Clips. The FDA's awareness of any of these matters would have led the FDA to take appropriate and timely actions, including but not limited to changing the labeling on the Filshie Clips, issuing warnings about migration, reviewing the full range of date to make decisions that may have prevented Ms. Wilson from having defective Filshie Clips implanted, ordering a halt of sales to conduct an impartial investigation into these issues and/or ordering a recall on the Filshie Clips.

135.    If CooperSurgical and Utah Medical had complied with its responsibilities under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as an importer, distributor, and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device, it would not have imported, sold, and distributed, and sold an

unreasonably dangerous device that caused Ms. Wilson's injuries, nor would it have put the Filshie Clips on the market with outdated, inadequate, or false information about its true risk of migration. If properly warned, the doctors who performed Ms. Wilson's tubal ligation procedure would have known about the true risk of migration and would have been in a better position to protect her from the injuries the Filshie Clips can cause. Similarly, Ms. Wilson never would have agreed to use the Filshie Clips for her tubal ligation had she known of their true propensity to migrate and cause harm she experienced. Even if she chose to have her tubal ligation procedure using the Filshie Clips, she would have been informed and aware of their propensity to migrate (either when she received her tubal ligation procedure or afterwards), thus, having her discover the cause of her injuries, and thus, minimizing her injuries, sooner.

136.    As a result of CooperSurgical's and Utah Medical's failure to adhere to the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties an importer, distributor, and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device, CooperSurgical and Utah Medical imported, sold, or distributed an unreasonably dangerous product without accurate information about its propensity to migrate, which reached Ms. Wilson, without substantial change in condition, and was implanted in accordance of its intended use, in Ms. Wilson. The unreasonably dangerous condition of the Filshie Clips caused it to migrate which caused Ms. Wilson to experience extreme pain in her lower abdominal/pelvic region. Eventually, after years of suffering, Ms. Wilson's doctor confirmed a clip was missing following radiological imaging. She was informed the Filshie Clips remained in her body and were displaced. Ms. Wilson continues to live under the specter of having the foreign

bodies migrating through her pelvic area and the fear of having to undergo surgery as a result of these products.

137.   This Count is based solely on CooperSurgical's and Utah Medical's failure to comply with the conditions set forth in the PMA approval order and the requirements set by federal regulatory and statutory law and does not impose any requirements that are different from, or in additional to, the CooperSurgical's and Utah Medical's duties as importers, sellers, and distributors of a Class III medical device approved by the FDA. The violation of these federal and regulatory requirements alone establishes liability under strict products liability and Plaintiff is seeking a damages remedy for the violations to the extent, and only to the extent, that they run parallel to the federal conditions and requirements and are not different from or in addition to the requirements of federal law.

**COUNT 7: COOPERSURGICAL AND UTAH MEDICAL – STRICT PRODUCTS LIABILITY - FAILURE TO WARN BASED EXCLUSIVELY ON VIOLATIONS OF 21 C.F.R. §§ PARTS 803, 814 AND 820 *et seq.***

138.   In Illinois law, a strict liability claim must show that (1) the product that caused harm was unreasonably unsafe or dangerous when it was designed, manufactured or distributed; (2) the manufacturer, sell, or distributor expected or intended for the products to reach the consumer without any changes by third parties; and (3) the defective product proximately caused injury. A product is considered unreasonably unsafe or dangerous when (1) the product is unsafe when put to use in an intended or reasonably foreseeable manner; or (2) it is dangerous to an extent beyond that which would be contemplated by the ordinary consumer.

139.   Under a failure to warn theory, a party must show that the defendant knew or should have known the danger.

140.     Further, parallel with federal law, Illinois law treats violations of federal statutes and regulations as establishing a *prima facie* case and as evidence of a party's failure to warn. However, to be clear, under the same facts, Plaintiff would have been able to establish a recoverable claim under Illinois' parallel common law failure to warn, even in the absence of federal law.

141.     CooperSurgical and Utah Medical, as importers, sellers, and distributors of products in Illinois, owed a common law duty to comply with all applicable federal laws and regulations.

142.     CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, have a duty and is required to comply with and not deviate from federal statutory and regulatory requirements that applied to the Filshie Clips. As a Class III medical device, CooperSurgical and Utah Medical were under a continuing duty to monitor its product after premarket approval and to discover and report to the FDA any complaints about the products performance and any adverse health consequences of which it became aware and that are or may be attributable to the product. CooperSurgical's and Utah Medical's duties under the FDA regulations and premarket approval conditions are listed and specified as follows:

(a) Pursuant to 21 C.F.R. § 814.82, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, have a duty to adhere to any post approval requirements in the PMA approval order, which "may include": (1) continuing evaluation and period reporting, (2) warnings, hazards, or precautions important to the device to be prominently displayed in the labeling of a device and in advertising, (3) maintenance of records to submit to the FDA to trace patients if such information is necessary to protect public health or if the FDA needs to review the safety of the device; (4) and "such other

requirements as FDA determines are necessary to provide reasonable assurance, or continued reasonable assurance, of the safety and effectiveness of the device." *Id.* at §§ 814.82(a)(2), (3), (5), (6), (9). Any deviation from the post approval requirements is a violation of federal law and also a violation of Illinois common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(b) Pursuant to 21 C.F.R. § 820.100, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, also have a duty to establish and maintain procedures for implementing a corrective and preventative action plan. CooperSurgical and Utah Medical are required to be pro-active and investigate the cause of nonconformities and implement effective corrective action to address complaints about the device, which includes but is not limited ensuring information about the problem is disseminated to those directly responsible for the quality of the product. Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as an importer, seller, and distributor but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(c) Pursuant to 21 C.F.R. § 820.198, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, have a duty to maintain complaint files and ensure that all complaints are properly processed, evaluated, documented, and determined whether the complaint would need to be reported to the FDA (*see* 21 C.F.R. § 803 *et. seq.*) Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as an importer, seller, and distributor but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(d) Pursuant to 21 C.F.R. §§ 803.1, 803.10, 803.40, 803.50, and 803.58, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, have a duty to properly report serious injuries to the FDA. Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as an importer, seller, and distributor to the Plaintiff but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

143.   Despite their duties, CooperSurgical and Utah Medical imported, sold, and distributed an unsafe and defective product, that was expected to reach the consumer without substantial change in condition, but only to the extent that such CooperSurgical's and Utah Medical's actions are parallel to and not different from or in addition to the requirement of the federal law in the following ways:

(a) CooperSurgical and Utah Medical failed to comply with 21 C.F.R. § 814.82 and Illinois' common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. CooperSurgical and Utah Medical did not adequately adhere to the conditions of approval and post approval requirements that are expected to be in the PMA approval order. CooperSurgical and Utah Medical did not properly evaluate, address, or report injury caused by the Filshie Clips. CooperSurgical and Utah Medical did not timely or accurately report the higher migration rates to the FDA. CooperSurgical and Utah Medical did not provide reasonable assurance, or continued reasonable assurance, of the safety and effectiveness of the device.

(b) CooperSurgical and Utah Medical failed to comply with 21 C.F.R. § 820.100 and Illinois' common law duties as an importer, seller, and distributor, but only to the extent that they

are parallel to and not different from or in addition to the requirements of federal law. CooperSurgical and Utah Medical failed to ensure information about the problem with the Filshie Clips was properly disseminated and did not submit relevant information to the appropriate individuals or agencies.

(c) CooperSurgical and Utah Medical failed to comply with 21 C.F.R. § 820.198 and Illinois' common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. CooperSurgical and Utah Medical failed to maintain complaint files and ensure that they are timely reported to the FDA.

(d) CooperSurgical and Utah Medical failed to comply with 21 C.F.R. §§ 803.1, 803.10, 803.40, 803.50, and 803.58 and Illinois' common law duties as an importer, distributor, and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. CooperSurgical and Utah Medical failed to timely and properly report serious injuries to the FDA.

(e) And CooperSurgical and Utah Medical were otherwise careless and negligent when it failed to comply with the conditions set forth in the PMA approval order and/or applicable federal regulatory and statutory law and as an importer, seller, and distributor under Illinois law, but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law.

144.   If CooperSurgical and Utah Medical had complied with its responsibilities under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as an importer, seller, and distributor but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA

as a Class III medical device, it would have timely reported incidents of injury, related studies, and scientific literature to the FDA. The FDA's awareness of any of these matters would have led the FDA to take appropriate and timely actions, including but not limited to changing the labeling on the Filshie Clips, issuing warnings about migration, reviewing the full range of date to make decisions that may have prevented Ms. Wilson from having defective Filshie Clips implanted, ordering a halt of sales to conduct an impartial investigation into these issues and/or ordering a recall on the Filshie Clips.

145.    If CooperSurgical and Utah Medical had complied with its responsibilities under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as an importer, seller, and distributor but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device, it would not ensured the FDA, the medical community and the public would have known about the risks of migration, either by properly warning the FDA or by properly executing a corrective and preventative action plan that could ensure medical community and/or public would be aware of the dangers of these products. If properly warned, the doctors who performed Ms. Wilson's tubal ligation procedure would have known about the true risk of migration and would have been in a better position to protect her from the injuries the Filshie Clips can cause. Similarly, Ms. Wilson never would have agreed to use the Filshie Clips for her tubal ligation had she known of their true propensity to migrate and cause harm she experienced. Even if she chose to have her tubal ligation procedure using the Filshie Clips, she would have been informed and aware of their propensity to migrate (either when she received her tubal ligation procedure or afterwards), thus, having her discover the cause of her injuries, and thus, minimizing her injuries, sooner.

146.    As a result of CooperSurgical's and Utah Medical's failure to adhere to the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as an importer, seller, and distributor but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and its obligations under the FDA as a Class III medical device, it failed to adequately warn the FDA, the medical community, and the public of the dangers of the product, which led to Ms. Wilson being implanted with the Filshie Clips, without being aware of its propensity to migrate. The Filshie Clips migrated which caused her to experience extreme pain in her lower abdominal/pelvic region. Eventually, after years of suffering, Ms. Wilson's doctor confirmed a clip was missing following radiological imaging. She was informed the Filshie Clips remained in her body and were displaced. Ms. Wilson continues to live under the specter of having the foreign bodies migrating through her pelvic area and the fear of having to undergo surgery as a result of these products.

147.    This Count is based solely on CooperSurgical's and Utah Medical's failure to comply with the conditions set forth in the PMA approval order and the requirements set by federal regulatory and statutory law and does not impose any requirements that are different from, or in additional to, the CooperSurgical's and Utah Medical's duties as an importer, seller, and distributor of a Class III medical device approved by the FDA. The violation of these federal and regulatory requirements alone establishes liability under the theory of failure to warn and Plaintiff is seeking a damages remedy to the extent, and only to the extent, that they run parallel to the federal conditions and requirements and are not different from or in addition to the requirements of federal law.

**COUNT 8: COOPERSURGIAL AND UTAH MEDICAL – PRODUCTS LIABILITY – NEGLIGENCE BASED EXCLUSIVELY ON VIOLATIONS OF 21 C.F.R. §§ PARTS 803, 814 AND 820 *et seq.***

148.    To prevail on a negligence theory requires proof of the traditional elements of (1) duty, (2) breach of duty, (3) causation, and (4) injury.

149.    Further, parallel with federal law, Illinois law treats violations of federal statutes and regulations as establishing a *prima facie* case and as evidence of common law negligence. However, to be clear, under the same facts, Plaintiff would have been able to establish a recoverable claim under Illinois' parallel common law negligence, even in the absence of federal law.

150.    CooperSurgical and Utah Medical, as importers, sellers, and distributors of products in Illinois, owed a common law duty to comply with all applicable federal laws and regulations.

151.    CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, have a duty and is required to comply with and not deviate from federal statutory and regulatory requirements that applied to the Filshie Clips. As a Class III medical device, CooperSurgical and Utah Medical were under a continuing duty to monitor its product after premarket approval and to discover and report to the FDA any complaints about the products performance and any adverse health consequences of which it became aware and that are or may be attributable to the product. CooperSurgical's and Utah Medical's duties under the FDA regulations and premarket approval conditions are listed and specified as follows:

(a) Pursuant to 21 C.F.R. § 814.80, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, have a duty to distribute and advertise the Filshie clip consistent with the conditions of approval specified by the PMA process. Any

deviation from the PMA approval order was a violation of federal law and also a violation of Illinois common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(b) Pursuant to 21 C.F.R. § 814.82, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, also have a duty to adhere to any post approval requirements in the PMA approval order, which "may include": (1) continuing evaluation and period reporting, (2) warnings, hazards, or precautions important to the device to be prominently displayed in the labeling of a device and in advertising, (3) maintenance of records to submit to the FDA to trace patients if such information is necessary to protect public health or if the FDA needs to review the safety of the device; (4) and "such other requirements as FDA determines are necessary to provide reasonable assurance, or continued reasonable assurance, of the safety and effectiveness of the device." *Id.* at §§ 814.82(a)(2), (3), (5), (6), (9). Any deviation from the post approval requirements is a violation of federal law and also a violation of Illinois common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(c) Pursuant to 21 C.F.R. § 820.100, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, also have a duty to establish and maintain procedures for implementing a corrective and preventative action plan. CooperSurgical and Utah Medical are required to be pro-active and investigate the cause of nonconformities and implement effective corrective action to address complaints about the device, which includes but is not limited to investigating nonconformities, identifying actions to correct

problems, verifying the corrective or preventative action, implementing change, ensuring information about the problem is disseminated to those directly responsible for the quality of the product, submitting relevant information to management, and documenting all such activities. Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as an importer, seller, and distributor but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(d) Pursuant to 21 C.F.R. § 820.198, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, have a duty to maintain complaint files and ensure that all complaints are properly processed, evaluated, documented, and determined whether the complaint would need to be reported to the FDA (*see* 21 C.F.R. § 803 *et. seq.*) Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as an importer, seller, and distributor but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(e) Pursuant to 21 C.F.R. §§ 803.1, 803.10, 803.40, and 803.58, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, have a duty to properly report serious injuries to the FDA. Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as an importer, seller, and distributor to the Plaintiff but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

152.    CooperSurgical and Utah Medical imported, sold, and distributed an unsafe and defective product, that was expected to reach the consumer without substantial change in condition, but only to the extent that such CooperSurgical's and Utah Medical's actions are parallel

to and not different from or in addition to the requirement of the federal law. CooperSurgical and Utah Medical breached their duties in the following ways:

(a) CooperSurgical and Utah Medical failed to comply with 21 C.F.R. §§ 814.80 and 814.82 and Illinois' common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. CooperSurgical and Utah Medical did not adequately adhere to the conditions of approval and post approval requirements that are expected to be in the PMA approval order. CooperSurgical and Utah Medical did not properly evaluate, address, or report injury caused by the Filshie Clips. CooperSurgical and Utah Medical did not timely or accurately report the higher migration rates to the FDA. CooperSurgical and Utah Medical did not provide reasonable assurance, or continued reasonable assurance, of the safety and effectiveness of the device.

(b) CooperSurgical and Utah Medical failed to comply with 21 C.F.R. § 820.100 and Illinois' common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. CooperSurgical and Utah Medical failed to establish and maintain procedures for implementing a corrective and preventative action plan. CooperSurgical and Utah Medical did not proactively and adequately investigate complaints it received about the Filshie Clips, did not identify actions to correct problems, did not implement change, did not ensure information about the problem was properly disseminated, did not submit relevant information to the appropriate individuals or agencies, and did not properly document all such activities.

(c) CooperSurgical and Utah Medical failed to comply with 21 C.F.R. § 820.198 and Illinois' common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. CooperSurgical and Utah Medical failed to maintain complaint files and ensure that they are properly processed, evaluated, corrected and timely reported to the FDA.

(d) CooperSurgical and Utah Medical failed to comply with 21 C.F.R. §§ 803.1, 803.10, 803.40, 803.50, and 803.58 and Illinois' common law duties as an importer, distributor, and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. CooperSurgical and Utah Medical failed to timely and properly report serious injuries to the FDA.

(e) And CooperSurgical and Utah Medical were otherwise careless and negligent when it failed to comply with the conditions set forth in the PMA approval order and/or applicable federal regulatory and statutory law and as an importer, seller, and distributor under Illinois law, but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law.

153.    CooperSurgical's and Utah Medical's breach of their duties and responsibilities under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as an importer, distributor, and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and their obligations under the FDA as a Class III medical device, was the direct and proximate cause of Plaintiff's injuries. CooperSurgical and Utah Medical imported, sold, and distributed a product that caused injures to consumers in violation of federal regulatory and statutory regulations. Had CooperSurgical and Utah Medical complied with their federal regulatory and statutory duties, thety would have had

properly identified and investigated any defects in their product, ensure that those who are directly responsible for assuring the quality of the product were aware of this defect, and implement a change that would properly address this defect. Furthermore, CooperSurgical would have timely and accurately informed the FDA of these complaints, the true potential for migration, and the dangers patients were exposed to and the injuries that were resulting as a result of the Filshie Clips. The FDA's awareness of any of these matters would have led the FDA to take appropriate and timely actions, including but not limited to changing the labeling on the Filshie Clips, issuing warnings about migration, reviewing the full range of date to make decisions that may have prevented Ms. Wilson from having defective Filshie Clips implanted, ordering a halt of sales to conduct an impartial investigation into these issues and/or ordering a recall on the Filshie Clips.

154.    CooperSurgical's and Utah Medical's breach of their duties and responsibilities under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as an importer, seller, and distributor but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and their obligations under the FDA as a Class III medical device, was the direct and proximate cause of Plaintiff's injuries. CooperSurgical and Utah Medical imported, sold, and distributed a product that caused injures to Plaintiff in violation of federal regulatory and statutory regulations. Had CooperSurgical and Utah Medical complied with their federal regulatory and statutory duties, the doctors who performed Ms. Wilson's tubal ligation procedure would have known about the true risk of migration. If properly warned, the doctors who performed Ms. Wilson's tubal ligation procedure would have known about the true risk of migration and would have been in a better position to protect her from the injuries the Filshie Clips can cause. Similarly, Ms. Wilson never would have agreed to use the Filshie Clips for her tubal ligation had she known of their true propensity to migrate and cause

harm she experienced. Even if she chose to have her tubal ligation procedure using the Filshie Clips, she would have been informed and aware of their propensity to migrate (either when she received her tubal ligation procedure or afterwards), thus, having her discover the cause of her injuries, and thus, minimizing her injuries, sooner.

155.    As a direct and proximate cause of the negligence and carelessness of CooperSurgical and Utah Medical to adhere to the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as an importer, seller, and distributor but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and their obligations under the FDA as a Class III medical device, the Filshie Clips were implanted in Ms. Wilson. The Filshie Clips migrated which caused her to experience extreme pain in her lower abdominal/pelvic region. Eventually, after years of suffering, Ms. Wilson's doctor confirmed a clip was missing following radiological imaging. She was informed the Filshie Clips remained in her body and were displaced. Ms. Wilson continues to live under the specter of having the foreign bodies migrating through her pelvic area and the fear of having to undergo surgery as a result of these products.

156.    This Count is based solely on CooperSurgical's and Utah Medical's failure to comply with the conditions set forth in the PMA approval order and the requirements set by federal regulatory and statutory law and does not impose any requirements that are different from, or in additional to, the CooperSurgical's and Utah Medical's duties as an importer, seller, and distributor of a Class III medical device approved by the FDA. The violation of these federal and regulatory requirements alone establishes liability under the theory of negligence and Plaintiff is seeking a damages remedy for negligence to the extent, and only to the extent, that they run parallel to the

federal conditions and requirements and are not different from or in addition to the requirements of federal law.

### COUNT 9: COOPERSURGICAL AND UTAH MEDICAL – GROSS NEGLIGENCE BASED EXCLUSIVELY ON VIOLATIONS OF 21 C.F.R. §§ PARTS 803, 814 AND 820 *et seq.*

157.    To prevail on a negligence theory requires proof of the traditional elements of (1) duty, (2) breach of duty, (3) causation, and (4) injury. Gross negligence means a high degree of negligence, an element of recklessness and absence of the slightest degree of care.

158.    Further, parallel with federal law, Illinois law treats violations of federal statutes and regulations as establishing a *prima facie* case and as evidence of common law negligence and gross negligence. However, to be clear, under the same facts, Plaintiff would have been able to establish a recoverable claim under Illinois' parallel common law gross negligence, even in the absence of federal law.

159.    CooperSurgical and Utah Medical, as importers, sellers, and distributors of products in Illinois, owed a common law duty to comply with all applicable federal laws and regulations.

160.    CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, have a duty and is required to comply with and not deviate from federal statutory and regulatory requirements that applied to the Filshie Clips. As a Class III medical device, CooperSurgical and Utah Medical were under a continuing duty to monitor their product after premarket approval and to discover and report to the FDA any complaints about the products performance and any adverse health consequences of which it became aware and that are or may be attributable to the product. CooperSurgical's and Utah Medical's duties under the FDA regulations and premarket approval conditions are listed and specified as follows:

(a) Pursuant to 21 C.F.R. § 814.80, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, have a duty to distribute and advertise the Filshie clip consistent with the conditions of approval specified by the PMA process. Any deviation from the PMA approval order was a violation of federal law and also a violation of Illinois common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(b) Pursuant to 21 C.F.R. § 814.82, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, also have a duty to adhere to any post approval requirements in the PMA approval order, which "may include": (1) continuing evaluation and period reporting, (2) warnings, hazards, or precautions important to the device to be prominently displayed in the labeling of a device and in advertising, (3) maintenance of records to submit to the FDA to trace patients if such information is necessary to protect public health or if the FDA needs to review the safety of the device; (4) and "such other requirements as FDA determines are necessary to provide reasonable assurance, or continued reasonable assurance, of the safety and effectiveness of the device." *Id.* at §§ 814.82(a)(2), (3), (5), (6), (9). Any deviation from the post approval requirements is a violation of federal law and also a violation of Illinois common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(c) Pursuant to 21 C.F.R. § 820.100, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, also have a duty to establish and maintain procedures for implementing a corrective and preventative action plan. CooperSurgical and

Utah Medical are required to be pro-active and investigate the cause of nonconformities and implement effective corrective action to address complaints about the device, which includes but is not limited to investigating nonconformities, identifying actions to correct problems, verifying the corrective or preventative action, implementing change, ensuring information about the problem is disseminated to those directly responsible for the quality of the product, submitting relevant information to management, and documenting all such activities. Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as an importer, seller, and distributor but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(d) Pursuant to 21 C.F.R. § 820.198, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, have a duty to maintain complaint files and ensure that all complaints are properly processed, evaluated, documented, and determined whether the complaint would need to be reported to the FDA (*see* 21 C.F.R. § 803 *et. seq.*) Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as a distributor and seller but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(e) Pursuant to 21 C.F.R. §§ 803.1, 803.10, 803.40, 803.50, and 803.58, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, have a duty to properly report serious injuries to the FDA. Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as an importer, seller, and distributor to the Plaintiff but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

161.    CooperSurgical and Utah Medical imported, sold, and distributed an unsafe and defective product, that was expected to reach the consumer without substantial change in condition, but only to the extent that such CooperSurgical's and Utah Medical's actions are parallel to and not different from or in addition to the requirement of the federal law. CooperSurgical and Utah Medical breached their duties in the following ways:

(a) CooperSurgical and Utah Medical failed to comply with 21 C.F.R. §§ 814.80 and 814.82 and Illinois' common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. CooperSurgical and Utah Medical did not adequately adhere to the conditions of approval and post approval requirements that are expected to be in the PMA approval order. CooperSurgical and Utah Medical did not properly evaluate, address, or report injury caused by the Filshie Clips. CooperSurgical and Utah Medical did not timely or accurately report the higher migration rates to the FDA. CooperSurgical and Utah Medical did not provide reasonable assurance, or continued reasonable assurance, of the safety and effectiveness of the device.

(b) CooperSurgical and Utah Medical failed to comply with 21 C.F.R. § 820.100 and Illinois' common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. CooperSurgical and Utah Medical failed to establish and maintain procedures for implementing a corrective and preventative action plan. CooperSurgical and Utah Medical did not proactively and adequately investigate complaints it received about the Filshie Clips, did not identify actions to correct problems, did not implement change, did not ensure information about the problem was properly disseminated, did not submit relevant

information to the appropriate individuals or agencies, and did not properly document all such activities.

(c) CooperSurgical and Utah Medical failed to comply with 21 C.F.R. § 820.198 and Illinois' common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. CooperSurgical and Utah Medical failed to maintain complaint files and ensure that they are properly processed, evaluated, corrected and timely reported to the FDA.

(d) CooperSurgical and Utah Medical failed to comply with 21 C.F.R. §§ 803.1, 803.10, 803.40, and 803.58 and Illinois' common law duties as an importer, distributor, and seller, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. CooperSurgical and Utah Medical failed to timely and properly report serious injuries to the FDA.

(e) And CooperSurgical and Utah Medical was otherwise careless and negligent when they failed to comply with the conditions set forth in the PMA approval order and/or applicable federal regulatory and statutory law and as an importer, seller, and distributor under Illinois law, but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law.

162.    CooperSurgical's and Utah Medical's breach of their duties and responsibilities under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as an importer, distributor, and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and their obligations under the FDA as a Class III medical device, was the direct and proximate cause of Plaintiff's injuries. CooperSurgical and Utah Medical imported, sold, and distributed a product that caused injures to

consumers in violation of federal regulatory and statutory regulations. Had CooperSurgical and Utah Medical complied with their federal regulatory and statutory duties, they would have had properly identified and investigated any defects in their product, ensure that those who are directly responsible for assuring the quality of the product were aware of this defect, and implement a change that would properly address this defect. Furthermore, CooperSurgical and Utah Medical would have timely and accurately informed the FDA of these complaints, the true potential for migration, and the dangers patients were exposed to and the injuries that were resulting as a result of the Filshie Clips. The FDA's awareness of any of these matters would have led the FDA to take appropriate and timely actions, including but not limited to changing the labeling on the Filshie Clips, issuing warnings about migration, reviewing the full range of date to make decisions that may have prevented Ms. Wilson from having defective Filshie Clips implanted, ordering a halt of sales to conduct an impartial investigation into these issues and/or ordering a recall on the Filshie Clips.

163.    CooperSurgical's and Utah Medical's breach of their duties and responsibilities under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as an importer, seller, and distributor but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and their obligations under the FDA as a Class III medical device, was the direct and proximate cause of Plaintiff's injuries. CooperSurgical and Utah Medical imported, sold, and distributed a product that caused injures to Plaintiff in violation of federal regulatory and statutory regulations. Had CooperSurgical and Utah Medical complied with their federal regulatory and statutory duties, the doctors who performed Ms. Wilson's tubal ligation procedure would have known about the true risk of migration. If properly warned, the doctors who performed Ms. Wilson's tubal ligation procedure would have

known about the true risk of migration and would have been in a better position to protect her from the injuries the Filshie Clips can cause. Similarly, Ms. Wilson never would have agreed to use the Filshie Clips for her tubal ligation had she known of their true propensity to migrate and cause harm she experienced. Even if she chose to have her tubal ligation procedure using the Filshie Clips, she would have been informed and aware of their propensity to migrate (either when she received her tubal ligation procedure or afterwards), thus, having her discover the cause of her injuries, and thus, minimizing her injuries, sooner.

164.    As a direct and proximate cause of the negligence and carelessness of CooperSurgical and Utah Medical to adhere to the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as an importer, seller, and distributor but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and their obligations under the FDA as a Class III medical device, the Filshie Clips were implanted in Ms. Wilson. The Filshie Clips migrated which caused her to experience extreme pain in her lower abdominal/pelvic region. Eventually, after years of suffering, Ms. Wilson's doctor confirmed a clip was missing following radiological imaging. She was informed the Filshie Clips remained in her body and were displaced. Ms. Wilson continues to live under the specter of having the foreign bodies migrating through her pelvic area and the fear of having to undergo surgery as a result of these products.

165.    Furthermore, CooperSurgical and Utah Medical had knowledge of the probable consequences of not taking care, as well as a reckless indifference to the consequences of not adhering to the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as an importer, seller, and distributor but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and their obligations

under the FDA as a Class III medical device. The reason the FDA requires medical devices such as Filshie Clips to obtain Class III approval before allowing them to be available to the public is because these products are potentially dangerous if they are defective or misused. The stringent requirements under the FDA regulations and the PMA approval order are to protect the public from potentially dangerous situations where a medical device that is implanted in a patient's body will malfunction. Furthermore, CooperSurgical and Utah Medical have, for years, received complaints about their Filshie Clips migrating and causing pain, harm, and further injuries to women. Each time CooperSurgical and Utah Medical received a complaint, they were aware of the consequences of their defective products causing real harm to real patients.

166.    However, despite this knowledge, CooperSurgical and Utah Medical knowingly and recklessly failed to adhere to their obligations under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as an importer, seller, and distributor but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and their obligations under the FDA as a Class III medical device, with a conscious indifference to the rights, safety, or welfare of others. CooperSurgical's and Utah Medical's acts and omissions, constitute gross negligence that proximately caused the injuries to Plaintiff.

167.    This Count is based solely on CooperSurgical's and Utah Medical's failure to comply with the conditions set forth in the PMA approval order and the requirements set by federal regulatory and statutory law and does not impose any requirements that are different from, or in additional to, the CooperSurgical's and Utah Medical's duties as an importer, seller, and distributor Class III medical device approved by the FDA. The violation of these federal and regulatory requirements alone establishes liability under the theory of gross negligence and Plaintiff is

seeking punitive damages to the extent, and only to the extent, that they run parallel to the federal conditions and requirements and are not different from or in addition to the requirements of federal law.

**<u>COUNT 10</u>: COOPERSURGICAL AND UTAH MEDICAL – PUNITIVE DAMAGES BASED EXCLUSIVELY ON VIOLATIONS OF 21 C.F.R. §§ PARTS 803, 814 AND 820 *et seq.***

168.    In Illinois, punitive damages can be awarded when one's wrongful conduct is characterized by wantonness, malice, oppression, willfulness, or other circumstance of aggravation with a reckless indifference to the right of others.

169.    Further, parallel with federal law, Illinois law treats violations of federal statutes and regulations as establishing a *prima facie* case and as evidence of common law claims such as gross negligence and oppression, fraud, wantonness, or malice. However, to be clear, under the same facts, Plaintiff would have been able to establish a recoverable claim for punitive damages under Illinois' parallel common law, even in the absence of federal law.

170.    CooperSurgical and Utah Medical, as importers, sellers, and distributors of products in Illinois, owed a common law duty to comply with all applicable federal laws and regulations.

171.    CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, have a duty and is required to comply with and not deviate from federal statutory and regulatory requirements that applied to the Filshie Clips. As a Class III medical device, CooperSurgical and Utah Medical were under a continuing duty to monitor their product after premarket approval and to discover and report to the FDA any complaints about the products performance and any adverse health consequences of which it became aware and that are or may

be attributable to the product. CooperSurgical's and Utah Medical's duties under the FDA regulations and premarket approval conditions are listed and specified as follows:

(a) Pursuant to 21 C.F.R. § 814.80, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, have a duty to distribute and advertise the Filshie clip consistent with the conditions of approval specified by the PMA process. Any deviation from the PMA approval order was a violation of federal law and also a violation of Illinois common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(b) Pursuant to 21 C.F.R. § 814.82, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, also have a duty to adhere to any post approval requirements in the PMA approval order, which "may include": (1) continuing evaluation and period reporting, (2) warnings, hazards, or precautions important to the device to be prominently displayed in the labeling of a device and in advertising, (3) maintenance of records to submit to the FDA to trace patients if such information is necessary to protect public health or if the FDA needs to review the safety of the device; (4) and "such other requirements as FDA determines are necessary to provide reasonable assurance, or continued reasonable assurance, of the safety and effectiveness of the device." *Id.* at §§ 814.82(a)(2), (3), (5), (6), (9). Any deviation from the post approval requirements is a violation of federal law and also a violation of Illinois common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(c) Pursuant to 21 C.F.R. § 820.100, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, also have a duty to establish and maintain procedures for implementing a corrective and preventative action plan. CooperSurgical and Utah Medical are required to be pro-active and investigate the cause of nonconformities and implement effective corrective action to address complaints about the device, which includes but is not limited to investigating nonconformities, identifying actions to correct problems, verifying the corrective or preventative action, implementing change, ensuring information about the problem is disseminated to those directly responsible for the quality of the product, submitting relevant information to management, and documenting all such activities. Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as an importer, seller, and distributor but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(d) Pursuant to 21 C.F.R. § 820.198, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, have a duty to maintain complaint files and ensure that all complaints are properly processed, evaluated, documented, and determined whether the complaint would need to be reported to the FDA (*see* 21 C.F.R. § 803 *et. seq.*) Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as an importer, seller, and distributor but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

(e) Pursuant to 21 C.F.R. §§ 803.1, 803.10, 803.40, and 803.58, CooperSurgical and Utah Medical, as importers, sellers, and distributors of a Class III medical device, have a duty to properly report serious injuries to the FDA. Failure to do so is a violation of federal law and also in violation of Illinois' common law duties as an importer, seller, and distributor

to the Plaintiff but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law.

172.    CooperSurgical and Utah Medical imported, sold, and distributed an unsafe and defective product, that was expected to reach the consumer without substantial change in condition, but only to the extent that such CooperSurgical's and Utah Medical's actions are parallel to and not different from or in addition to the requirement of the federal law. CooperSurgical and Utah Medical breached their duties in the following ways:

(a) CooperSurgical and Utah Medical failed to comply with 21 C.F.R. §§ 814.80 and 814.82 and Illinois' common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. CooperSurgical and Utah Medical did not adequately adhere to the conditions of approval and post approval requirements that are expected to be in the PMA approval order. CooperSurgical and Utah Medical did not properly evaluate, address, or report injury caused by the Filshie Clips. CooperSurgical and Utah Medical did not timely or accurately report the higher migration rates to the FDA. CooperSurgical and Utah Medical did not provide reasonable assurance, or continued reasonable assurance, of the safety and effectiveness of the device.

(b) CooperSurgical and Utah Medical failed to comply with 21 C.F.R. § 820.100 and Illinois' common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. CooperSurgical and Utah Medical failed to establish and maintain procedures for implementing a corrective and preventative action plan. CooperSurgical and Utah Medical did not proactively and adequately investigate complaints it received about the Filshie

Clips, did not identify actions to correct problems, did not implement change, did not ensure information about the problem was properly disseminated, did not submit relevant information to the appropriate individuals or agencies, and did not properly document all such activities.

(c) CooperSurgical and Utah Medical failed to comply with 21 C.F.R. § 820.198 and Illinois' common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. CooperSurgical and Utah Medical failed to maintain complaint files and ensure that they are properly processed, evaluated, corrected and timely reported to the FDA.

(d) CooperSurgical and Utah Medical failed to comply with 21 C.F.R. §§ 803.1, 803.10, 803.40, and 803.58 and Illinois' common law duties as an importer, seller, and distributor, but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law. CooperSurgical and Utah Medical failed to timely and properly report serious injuries to the FDA.

(e) And CooperSurgical and Utah Medical were otherwise careless and negligent when it failed to comply with the conditions set forth in the PMA approval order and/or applicable federal regulatory and statutory law and as an importer, seller, and distributor under Illinois law, but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law.

173.   CooperSurgical's and Utah Medical's breach of their duties and responsibilities under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as an importer, seller, and distributor but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and their obligations under the

FDA as a Class III medical device, was the direct and proximate cause of Plaintiff's injuries. CooperSurgical and Utah Medical imported, sold, and distributed a product that caused injures to consumers in violation of federal regulatory and statutory regulations. Had CooperSurgical and Utah Medical complied with their federal regulatory and statutory duties, the FDA would have known about the true potential for migration of these Filshie Clips and the dangers patients were exposed to and the injuries that were resulting as a result of the Filshie Clips. The FDA's awareness of any of these matters would have led the FDA to take appropriate and timely actions, including but not limited to changing the labeling on the Filshie Clips, issuing warnings about migration, reviewing the full range of date to make decisions that may have prevented Ms. Wilson from having defective Filshie Clips implanted, ordering a halt of sales to conduct an impartial investigation into these issues and/or ordering a recall on the Filshie Clips.

174.    CooperSurgical's and Utah Medical's breach of their duties and responsibilities under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as an importer, seller, and distributor but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and their obligations under the FDA as a Class III medical device, was the direct and proximate cause of Plaintiff's injuries. CooperSurgical and Utah Medical imported, sold, and distributed a product that caused injures to consumers in violation of federal regulatory and statutory regulations. Had CooperSurgical and Utah Medical complied with their federal regulatory and statutory duties, the doctors who performed, the doctors who performed Ms. Wilson's tubal ligation procedure would have known about the true risk of migration and would have been in a better position to protect her from the injuries the Filshie Clips can cause. Similarly, Ms. Wilson never would have agreed to use the Filshie Clips for her tubal ligation had she known of their true propensity to migrate and cause

harm she experienced. Even if she chose to have her tubal ligation procedure using the Filshie Clips, she would have been informed and aware of their propensity to migrate (either when she received her tubal ligation procedure or afterwards), thus, having her discover the cause of her injuries, and thus, minimizing her injuries, sooner.

175.    As a direct and proximate cause of the negligence and carelessness of CooperSurgical and Utah Medical to adhere to the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as an importer, seller, and distributor but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and their obligations under the FDA as a Class III medical device, the Filshie Clips were implanted in Ms. Wilson. The Filshie Clips migrated which caused her to experience extreme pain in her lower abdominal/pelvic region. Eventually, after years of suffering, Ms. Wilson's doctor confirmed a clip was missing following radiological imaging. She was informed the Filshie Clips remained in her body and were displaced. Ms. Wilson continues to live under the specter of having the foreign bodies migrating through her pelvic area and the fear of having to undergo surgery as a result of these products.

176.    Furthermore, CooperSurgical and Utah Medical had knowledge of the probable consequences of not taking care, as well as an indifference to the consequences of not adhering to the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as an importer, seller, and distributor but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and their obligations under the FDA as a Class III medical device. The reason the FDA requires medical devices such as the Filshie Clips to obtain Class III approval before allowing them to be available to the public is because these products are potentially dangerous if they are defective or misused. The stringent

requirements under the FDA regulations and the PMA approval order are to protect the public from potentially dangerous situations where a medical device that is implanted in a patient's body will malfunction. Furthermore, CooperSurgical and Utah Medical have, for years, received complaints about their Filshie Clips migrating and causing pain, harm, and further injuries to women. Each time CooperSurgical and Utah Medical received a complaint, they were aware of the consequences of their defective products causing real harm to real patients.

177. However, despite this knowledge, CooperSurgical and Utah Medical knowingly failed to adhere to their obligations under the PMA approval order, federal regulatory and statutory law, and the Illinois common law duties as an importer, distributor, and seller but only to the extent that Illinois law is parallel to and not different from or in addition to the requirements of federal law and their obligations under the FDA as a Class III medical device, with a conscious indifference to the rights, safety, or welfare of others. CooperSurgical's and Utah Medical's acts and omissions, constitute gross negligence that proximately caused the injuries to Plaintiff. The conduct of actively failing to adequately investigate the migration problem, avoiding informing the FDA of the much higher migration rate of the Filshie Clips, and not informing the medical community and public of the dangers of the Filshie Clips, was not only a violation of the FDA regulatory requirements, but was carried on with a reckless or conscious disregard of the rights and safety of others. In that regard, Plaintiff will seek punitive damages in an amount that would punish CooperSurgical and Utah Medical for their conduct and which would deter other importers, distributors, and sellers from engaging in such misconduct in the future.

178. This Count is based solely on CooperSurgical's and Utah Medical's failure to comply with the conditions set forth in the PMA approval order and the requirements set by federal regulatory and statutory law and does not impose any requirements that are different from, or in

additional to, the CooperSurgical's and Utah Medical's duties as a seller and distributor of a Class III medical device approved by the FDA. The violation of these federal and regulatory requirements alone establishes a showing of fraud, malice, wantonness and oppression and Plaintiff is seeking punitive damages to the extent, and only to the extent, that they run parallel to the federal conditions and requirements and are not different from or in addition to the requirements of federal law.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendants, in an amount in excess of $75,000 (seventy-five thousand dollars), plus cost and fees of this suit.

## VII.    RESERVATION OF RIGHTS

179.    Plaintiff reserves the right to prove the amount of damages at trial. Plaintiff reserves the right to amend her Petition to add or remove counts upon further discovery and as her investigation continues.

## VIII.  JURY DEMAND

180.    Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby requests that all causes of action alleged herein be tried before a properly impaneled jury.

## IX.     PRAYER FOR RELIEF -- DAMAGES

181.    The conduct of the Defendants, as alleged hereinabove, their failure to adhere to their obligations under the PMA approval order, federal regulations, and Illinois' common law duties as a manufacturer, importer, distributor, and seller but only to the extent that they are parallel to and not different from or in addition to the requirements of federal law, was a direct, proximate and producing cause of the damages to Plaintiff and of the following general and special damages including:

(a) All available compensatory damages for the described losses with respect to each cause of

action;

(b) Past and future medical expenses, as well as the cost associated with past and future life care;

(c) Past and future lost wages and loss of earning capacity;

(d) Past and future emotional distress;

(e) Consequential damages;

(f) All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

(g) Loss of consortium damages for Plaintiff;

(h) Damages to punish Defendants for proximately causing physical pain and mental anguish;

(i) Enter judgment against Defendants, jointly and severally, awarding Plaintiff damages in an amount to be determined at trial and her costs and reasonable attorney's fees including, compensatory damages in an amount sufficient to fairly and completely compensate her for all damages;

(j) Punitive damages;

(k) Attorney's fees;

(l) Prejudgment and post judgment interest, costs, and disbursements;

(m) Any and all other recoverable personal injury damages for Plaintiff; and

(n) Such and further relief at law or in equity as this Court may deem just and appropriate.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands that the Defendants be cited to appear and answer herein. Upon final judgment against the Defendants, and each of them, jointly and severally, awarding Plaintiff damages in an amount to be determined at trial and her costs and reasonable attorney's fees including, compensatory damages in an amount sufficient to

fairly and completely compensate her for all damages listed herein and such and further relief at

law or in equity as this Court may deem just and appropriate.

Dated: July 25, 2022                          Respectfully submitted,

                                              */s/ Daniel R. Griffin*

                                              DANIEL R. GRIFFIN (*Lead Counsel*)
                                              dan@griffinpurnell.com

                                              SIMON B. PURNELL (*Pro Hac Pending*)
                                              simon@griffinpurnell.com

                                              GRIFFIN PURNELL LLC
                                              8555 West Forest Home Avenue, Suite 205
                                              Greenfield, Wisconsin 53228
                                              Telephone: (262) 777-1831
                                              Facsimile: (361) 356-4348

                                              **ATTORNEYS FOR PLAINTIFF**